A96A0462. IN THE INTEREST OF J. M. D. et al., children.
(472 SE2d 123)

RUFFIN, Judge.

Cowanda Cox appeals from the juvenile court's order terminating her parental rights to her five children, J. M. D., J. J. D., K. C. C., J. R. C., and D. Q. C., ages two through nine. In her sole enumeration of error, Cox asserts that there was insufficient evidence establishing that her conduct caused the children to be deprived. For reasons which follow, we affirm.

OCGA § 15-11-81 provides a two-step analysis for determining whether a parent's rights should be terminated. *In the Interest of D. I. W.*, 215 Ga. App. 644, 645 (1) (451 SE2d 804) (1994). First, the court determines whether there is clear and convincing evidence of parental misconduct or that the parent is unable to care for and control the child. Id. Second, the court determines whether termination is in the best interest of the child. Id. In determining whether a parent's misconduct or inability warrants a termination of parental rights, a court must consider whether (1) the child is deprived; (2) the

lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue or will not be remedied; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. Id.

On appeal, we must view the evidence in a light most favorable to the juvenile court's order and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. *In the Interest of M. N. L.*, 221 Ga. App. 123 (470 SE2d 753) (1996); *In the Interest of D. I. W,* supra at 645. We do not weigh the evidence and must defer to the trial judge as the factfinder. *In the Interest of A. L. L.*, 211 Ga. App. 767, 769 (5) (440 SE2d 517) (1994).

Viewed in this light, the record shows that the children were fathered by various individuals, none of whom participated in raising them or provided financial support. The children, except D. Q. C. who was not born at the time, were first taken into custody by the Department of Family & Children Services ("DFCS") in August 1992. The record shows that Cox admitted she was using illegal drugs, the children's home was infested with vermin, and K. C. C. had ant bite sores on her. Over the next three years, several plans were developed to reunite Cox with her children. The plans required Cox to undergo drug evaluations, complete inpatient drug treatment, attend to her medical needs associated with being pregnant and HIV positive, obtain stable housing, attend parenting skills classes and visit the children on a monthly basis. DFCS reviewed Cox's progress under each of the plans on a periodic basis, and although Cox was invited to the reviews, she attended only occasionally.

Cox had significant problems complying with the plans. Although Cox testified that she completed two drug treatment programs, two of her DFCS caseworkers testified that they were not aware that she completed any. The caseworkers testified that although Cox was currently enrolled in a drug treatment program, she had entered several in the past, had quit attending some, was expelled from others, and completed none. In addition, one caseworker described Cox's housing situation as "very unstable." She was periodically evicted from housing she obtained on her own, has lived with relatives and other acquaintances, and at times lived in battered women's shelters and homeless shelters. Regarding the parenting skills classes, a caseworker testified that Cox enrolled in a class, but did not participate in enough of the classes to obtain a certificate. Although Cox generally visited the children on a regular basis, a caseworker testified that after the first year of supervision, Cox began using drugs again and visited inconsistently, visiting for periods of three or four months, then missing two or three months.

Cox admitted using cocaine when she was pregnant with D. Q. C., and when he was born in June 1993, he had cocaine in his system. During the next review conducted in November 1993, DFCS determined that if Cox did "not stay or prove to be drug free for the next six months the agency [would] move the case toward [the] permanency planning unit." Although Cox generally complied with the goals for the following six months, her caseworker suspected she was sporadically using drugs. In its report, DFCS restated the same goals, including the requirement that Cox remain drug free or face permanent termination. A citizen review panel conducted an interim review on August 5, 1994. Cox did not attend the review and did not provide any verification that she had remained drug free. Cox's caseworker continued to suspect that she was using drugs. When asked why she was suspicious, the caseworker acknowledged that Cox had mentioned to her that "she had regressed and was using drugs."

Cox asserts that the evidence was insufficient to satisfy the four criteria used to determine whether a parent's conduct warrants termination. We disagree.

In August 1992 and June 1993, the juvenile court entered orders finding the children were deprived. Because no appeals were taken from those orders, Cox is bound by the determinations. *In the Interest of D. I. W.*, supra at 645. Those orders and the testimony in the hearing below also showed that the children's deprivation was caused by Cox's conduct.

The evidence was also sufficient to show that the deprivation is likely to continue. Although Cox argues past conduct may not be used to show future deprivation is likely, where a parent has a history of drug abuse problems, the court may consider that history in determining whether the child presently is without the proper care and control and whether such deprivation is likely to continue. Id. Accordingly, although the record shows that at the time of the hearing Cox was employed, living with her sister, and about to enter a new drug treatment program, that evidence is insufficient to demand a finding that she would be a suitable parent. While we sincerely applaud Cox's continued efforts to rehabilitate herself through drug treatment programs and to obtain suitable employment and housing, we must conclude, based on the evidence, that a rational trier of fact could have found by clear and convincing evidence that the children's deprived conditions were likely to continue. See *In the Interest of J. M. C.*, 201 Ga. App. 173 (410 SE2d 368) (1991). Under these circumstances, we must also conclude that there was sufficient evidence to support the trial court's finding that the continued deprivation "is likely to cause serious physical, mental, emotional, or moral harm to the children."

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED MAY 29, 1996.

*Hassett, Cohen, Beitchman & Goldstein, Jeffrey A. Bashuk*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Rubin, Winter, Rapoport & Hall, Robert E. Hall, Theodore A. Speaker, James W. Blount*, for appellee.