A97A0454. IN THE INTEREST OF E. C., a child.
(482 SE2d 522)

ELDRIDGE, Judge.

Appellant Brenda Camp challenges the termination of her parental rights, asserting that there was insufficient evidence that her child was deprived or that such deprivation, if present, was likely to continue. For the reasons set forth, we affirm the termination order of the trial court.

On March 11, 1994, an investigator from the Henry County Department of Family & Children Services ("DFCS") visited appellant's home on a referral. Appellant answered the door wearing only a tee-shirt and talked to the investigator for ten minutes before putting on additional clothing. Appellant's speech was slurred, she appeared intoxicated, and she admitted taking medications and drugs. Appellant's 14-month-old child, E. C., was taken into emergency custody by DFCS under court order. Following a 72-hour hearing on March 14, 1994, the juvenile court determined that the child was "deprived as contemplated under the provisions of OCGA § 15-11-2 (8) in that she is without proper parental care, control, subsistence, education, . . . [and concluding that] the deprivation of the child will continue and she will suffer irreparable harm" unless

removed from appellant's home.[1] The court awarded temporary custody to DFCS and held a hearing on the deprivation petition on March 28, 1994. Between the first and second hearings, appellant was tested for drug use on March 18, 1994 and tested positive for methadone, codeine, and three other compounds. On September 13, 1994, the juvenile court found E. C. to be deprived and entered an order nunc pro tunc to March 28, 1994. The order was not appealed by appellant and later was extended for two years on September 21, 1995.

Between March 1994 and November 1995, DFCS developed four case plans for appellant with the goal of reuniting her with E. C. The juvenile court approved and adopted the case plans. Among the requirements of the plans, which were almost identical, were provisions requiring appellant to visit E. C. weekly; to secure and maintain a stable residence; to attain and maintain "emotional stability"; to address her drug problem and remain drug-free; to obtain a doctor's report documenting what medications have been prescribed and their purpose; to obtain psychological counseling; and to pay child support in the amount of $25 per month.

Following appellant's failure to comply with the case plans, DFCS petitioned the court to terminate the parental rights of appellant and the child's father on April 6, 1996. A termination hearing was held on June 19, 1996. The court heard testimony from appellant and DFCS employees, as well as the child's guardian ad litem, who recommended that appellant's parental rights be terminated. The court terminated the parental rights of appellant and the child's father[2] on August 20, 1996. Appellant timely appealed.

In her only enumeration of error, appellant asserts that there was not "clear and convincing evidence" that E. C. was deprived or that any deprivation, if present, was likely to continue. This is essentially a challenge to the sufficiency of the evidence presented during the termination hearing in June 1996.

"The standard of review of a juvenile court's decision to terminate parental rights is 'whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost.' *In the Interest of A. O. A.*, 172 Ga. App. 364, 365-366 (323 SE2d 208) (1984), quoting *Blackburn v. Blackburn*, 249 Ga. 689, 694 (292 SE2d 821) (1982); see also *In the Interest of A. M. V.*, 222 Ga. App. 528 (474 SE2d 723) (1996); *In the Interest of J. M. D.*, 221 Ga. App. 556 (472 SE2d 123) (1996); *In the*

---

[1] This determination was not appealed by appellant and is not subject to review by this Court.

[2] The child's father did not appeal the termination of his parental rights.

*Interest of S. L. W.*, 221 Ga. App. 509, 510 (471 SE2d 579) (1996) (holding that the 'reviewing court is to defer to the lower court in the area of factfinding and should affirm' unless this standard is not met)." (Punctuation omitted.) *In the Interest of T. B. R.*, 224 Ga. App. 470, 472 (480 SE2d 901) (1997); see also *Clarke v. Cotton*, 263 Ga. 861 (440 SE2d 165) (1994) (holding that clear and convincing evidence is that intermediate standard of proof between "preponderance of the evidence" and "beyond a reasonable doubt.").

Under OCGA § 15-11-81 (a), the considerations for terminating parental rights involve a two-step process. *In the Interest of J. M. D.*, 221 Ga. App. at 557. The trial court must first determine "whether there is present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81 (a). Such conduct or inability may be proved by showing, inter alia, that (1) the child is deprived; (2) such deprivation is caused by the lack of proper parental care or control by the parent in question; (3) the deprivation is likely to continue; and (4) the "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81 (b) (4) (A) (i)-(iv).

Further, in determining whether there is a lack of "proper parental care and control," the court may consider several factors, including the parent's "[e]xcessive use of . . . narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child," as well as "physical, mental, or emotional neglect of the child or evidence of past physical, mental, or emotional neglect of the child or of another child by the parent." OCGA § 15-11-81 (b) (4) (B) (ii), (v).

Once the trial court establishes a lack of parental care and control, the second part of the test for determining whether parental rights should be terminated is whether such termination "is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-81 (a).

Therefore, after examining the evidence in the light most favorable to the appellee, the State of Georgia and DFCS, we conclude that there is more than sufficient clear and convincing evidence in the case sub judice for a rational factfinder to determine that appellant's parental rights should be terminated and that such termination is in E. C.'s best interest.

The first factor in the determination of parental misconduct or inability is consideration of whether the child is deprived. In the case sub judice, E. C. was determined to be deprived in March 1994 and was taken into custody by DFCS. This deprivation order was

extended in 1995 and has not been appealed by appellant. Therefore, appellant is bound by this finding of deprivation and the first factor is satisfied. *In the Interest of T. B. R.*, 224 Ga. App. at 473; *In the Interest of J. M. D.*, 221 Ga. App. at 558; *In the Interest of S. L. W.*, 221 Ga. App. at 512.

However, even without an express finding of deprivation by the court, there is clear and convincing evidence that E. C. was deprived in 1994 and still would be deprived if she were living with appellant. Appellant is currently homeless, after leaving her parent's home in Henry County, where she previously lived with E. C. Appellant is disabled with a back injury resulting from a car accident and receives $423 in Social Security disability payments per month. Until recently, the disability check was sent to appellant's mother, who used it to pay appellant's rent and utilities and sent appellant $100 monthly with which to purchase all of her food and necessities. Appellant owned a car at one time, but had no money to have it repaired when it broke down. Therefore, she primarily relies on friends for transportation, although she admitted that she sometimes hitchhikes. While appellant denies that her lack of resources in any way deprived E. C., she seems to blame the same problems for her frequent failure to visit E. C. during required weekly visitations.

Even with these difficulties, however, appellant has somehow managed to maintain daily methadone treatments in Atlanta, Georgia. She is transported daily to Atlanta by a van which is paid for by Medicaid. It is unclear why appellant is taking the methadone treatments, since she consistently has failed, in abrogation of her case plan requirements, to provide a physician's report on her physical condition and all of her prescribed medications. The only explanation for the drug use is appellant's claim that she injured her back in a 1991 car accident and has been disabled ever since, although she freely admits she is capable of working. Appellant admits taking methadone treatments while pregnant with E. C. Appellant claims she is addicted to painkillers, but even though she has had the opportunity to obtain Medicaid-financed, in-patient detoxification treatment, she has resisted such treatment.

Such evidence goes not only to a finding that E. C. is deprived, but also to the second factor to be considered by the court, which is whether the deprivation is caused by a lack of proper parental care or control by appellant. Appellant's unexplained daily use of narcotics supports a finding that appellant is "incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child." OCGA § 15-11-81 (b) (4) (B) (ii). Appellant's refusal to address her drug problem, and her apparent inability to support herself and provide a stable environment for E. C., provide adequate "clear and convincing evidence" that E. C.'s deprivation is

caused by appellant.

However, the trial court heard additional evidence that supports such a finding. During testimony, appellant admitted to having four older children, all of whom live with others. Appellant's oldest son is now 20 years old, but lived with his maternal grandmother in Florida prior to reaching the age of majority. Two of her other children are currently being raised by relatives; appellant voluntarily allowed her son to stay with his father's relatives, and she involuntarily lost custody of her daughter (who is now 12 years old). Appellant's youngest son was given up for adoption in 1992. Appellant admitted that, due to her inability to care for the child, who was born three months prematurely and addicted to drugs, she voluntarily gave him up for adoption. Appellant also admitted during testimony that she had not seen or spoken to her older children in three years. Such testimony is evidence of "physical, mental, or emotional neglect of another child by the parent," which further supports a finding that appellant lacks "proper parental care or control" under OCGA § 15-11-81 (b) (4) (A) (ii). OCGA § 15-11-81 (b) (4) (B) (v).

Having found that E. C. is deprived and that such deprivation is caused by appellant, the third factor to be considered is whether the deprivation of E. C. is likely to continue. OCGA § 15-11-81 (b) (4) (iii). "In addition to evidence of present parental misconduct or inability, 'evidence of past conduct may be considered in determining whether the deprivation would be likely to continue. . . .' *In the Interest of A. M. V.,* 222 Ga. App. [528, 531 (474 SE2d 723) (1996)]; *In the Interest of B. J.,* 220 Ga. App. 144, 146 (469 SE2d 313) (1996)." *In the Interest of T. B. R.,* 224 Ga. App. at 474. Such an inference is appropriate, since the juvenile court is not required to reunite E. C. with appellant in order to obtain current evidence of deprivation or neglect. See *Roberts v. State,* 141 Ga. App. 268, 270 (233 SE2d 224) (1977) (holding that "there is no reason why a determination of deprivation may not be made on proof that the conditions under which the child would be raised in the parent's home strongly indicate that deprivation will occur in the future.").

Prior to the removal of E. C. from her home in March 1994, appellant asserts that life with E. C. was just "perfect" before DFCS interceded and seems to assert that things will again be perfect once E. C. is returned to appellant's custody. This perception may originate in appellant's apparent belief that DFCS and others are responsible for most, if not all, of her current problems, even while she has expended very little effort in addressing the problems.

For example, appellant has failed to achieve even the most basic requirements under the DFCS case plan because, she asserts, she does not think the requirements are necessary, she is unclear about what is required under the plans, or she is otherwise unable to

accomplish the goals. She claims that her failure to visit with E. C. at almost two-thirds (64 of 98) of the scheduled weekly visits was largely due to DFCS's failure to provide transportation for her. However, the case plans specifically noted that appellant alone was responsible for securing transportation to and from the required visitations.[3] Further, a DFCS employee testified that appellant was offered the opportunity to call the DFCS office in advance of the scheduled visitations so that transportation could be arranged. Appellant never requested transportation in advance and often cancelled visitations at the last minute due to sickness or other reasons unrelated to a lack of transportation. Notably, a lack of transportation does not explain why appellant fell asleep during two or three of the scheduled visitations, during which time she was expected to interact and "bond" with the child.

Further, appellant consistently failed to obtain a medical explanation for her methadone use, to secure drug counseling, to provide the results of required monthly drug screenings, and to pay court-ordered child support.[4] Such failure to abide by the case plans continued even after a DFCS employee gave appellant a one-page, simplified list of requirements that had to be met by appellant; the list was accompanied by the warning that "if you [appellant] do not do these things by Dec., 1995, DFCS will file for termination of parental rights!" A DFCS employee also testified that she discussed the case plan requirements with appellant twenty-one times over two years.

Finally, appellant is addicted to methadone and appears unwilling to undergo detoxification treatment; currently homeless; unemployed with no significant employment history; and without an adequate source of income or transportation. The evidence supports a finding that the deprivation of E. C. by appellant would continue if they are reunited.

Therefore, the final factor to be considered is whether or not the "continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child." OCGA § 15-11-81 (b) (4) (A) (iv). In the case sub judice, the evidence strongly supports a finding that appellant is physically, emotionally, and financially unable to manage her own life, even without the added burden of a young, dependent child. There is no indication that appellant will be prepared in the near future to care for this child and to provide for E. C.'s medical, emotional, and educational needs. In fact, when E. C. experienced health problems requiring ear surgery in July 1995,

---

[3] Although appellant asserts that DFCS was required to provide such transportation as "direct services" under the case plans, she cites no authority for this proposition, and we decline to adopt such a DFCS requirement.

[4] Appellant did pay $24 in child support on November 22, 1995.

appellant missed both the initial authorization hearing and the rescheduled hearing. In addition, appellant seems unable or unwilling to adequately supervise the child, since she fell asleep during a few brief weekly visitations with the child. Such evidence indicates not only a serious lack of interest on appellant's part in the child's physical well-being, but also indicates that E. C. could be exposed to medical neglect or physical harm if left solely in the care of appellant.

Further, DFCS documents indicate that E. C. has "made tremendous developmental gains since being in [foster care] . . . [and is] no longer involved with Early Intervention because of the great strides she's made in terms of developmental progress." Finally, observations by DFCS workers of the interaction between appellant and E. C. indicate that the child has not bonded with appellant, calls her foster mother "mommy," and seems confused when both appellant and the foster mother are in the same room together. Such evidence supports a finding that E. C. would suffer confusion, developmental stagnation, potential medical neglect, and other serious harm if returned to the custody of the appellant.

Therefore, upon a finding of "parental misconduct or inability" under OCGA § 15-11-81 (a), the trial court then must determine whether terminating parental rights "is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-81 (a). "Those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest." *In the Interest of S. L. W.*, 221 Ga. App. at 513, quoting *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (370 SE2d 490) (1988).

After viewing the evidence, as presented above, in the light most favorable to the appellee, there is more than sufficient clear and convincing evidence that the termination of appellant's parental rights is in E. C.'s best interests. At four years of age, E. C. is apparently thriving in foster care. Her physical, emotional, and educational needs are being addressed. Upon termination of appellant's parental rights, E. C. will become eligible for adoption and will have a realistic possibility of having a secure, stable home.

In contrast, there is no evidence that E. C. will receive adequate care and attention if returned to appellant. On the contrary, there is ample evidence that E. C. will again be deprived of her physical, emotional, mental, and moral well-being, as well as opportunities for future development. Although appellant presented evidence that she has been more diligent in pursuing the requirements of the case plan since the termination petition was filed, the trial court had the opportunity to weigh the evidence of appellant's positive actions

against her own damaging conflicting statements[5] and to determine the chances of appellant's successful rehabilitation. See *In the Interest of M. N. L.*, 221 Ga. App. 123 (470 SE2d 753) (1996).

On appeal of a trial court judgment, the appellate court's role is "not to weigh the evidence and give a de novo opinion as to the weight of the evidence but merely to determine if there is sufficient evidence to authorize the trial court's judgment. . . . The factfinding and weighing of evidence is to be done in the trial court under the clear and convincing evidence test. The reviewing court is to defer to the lower court in the area of factfinding and should affirm unless the appellate standard of review, here the rational factfinder test, is not met." (Citations and punctuation omitted.) *In the Interest of A. L. L.*, 211 Ga. App. 767, 770 (440 SE2d 517) (1994). There is more than sufficient clear and convincing evidence in the case sub judice for a rational factfinder to conclude that appellant's parental rights should be terminated and that such termination is in E. C.'s best interest.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 28, 1997.

*Meadows & Power, Gregory A. Futch*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, Ernest D. Blount*, for appellee.

---

[5] For example, appellant apparently lied to DFCS caseworkers when she stated that she did not use drugs; this statement conflicts with her testimony that she uses methadone daily, as well as evidence that she tested positive for five narcotics just after her seventy-two-hour hearing in March 1994. Further, appellant has stated on different occasions that she has one, three, or four children in addition to E. C. Such statements evince a lack of credibility on appellant's part that appropriately may be considered by the trial court.