A97A2451. IN THE INTEREST OF V. S. et al., children.
(495 SE2d 142)

BLACKBURN, Judge.

Appellant, the biological mother of V. S. and C. S., appeals the juvenile court's termination of her parental rights, claiming that the evidence was insufficient to support the termination.[1] The appellant also contends that the juvenile court failed to follow certain procedural requirements imposed by OCGA § 15-11-41. For the reasons dis-

---

[1] The rights of the biological father of V. S. and the biological father of C. S. were also terminated on grounds of abandonment. The fathers are not parties to this appeal.

cussed below, we affirm the decision of the juvenile court.

On appeal, this Court must determine "whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. . . . This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is "present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). In determining whether a child is without proper parental care and control, a court may consider, among other things, "[c]onviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship" and "[e]gregious conduct or evidence of past egregious conduct of the parent toward the child . . . of a physically, emotionally, or sexually cruel or abusive nature." OCGA § 15-11-81 (b) (4) (B) (iii), (iv). In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child. OCGA § 15-11-81 (a).

In February 1995, V. S., age six, and C. S., age five, were found to be deprived and were placed in the custody of the Department of Family & Children Services ("DFACS") after their mother and her boyfriend were arrested for molesting the children. In a voluntary written statement to the police, appellant admitted taking part in the molestation. In describing the acts of molestation, appellant recounted that her boyfriend "placed his finger inside [appellant's] vagina [and] rubbed his finger under [C. S.'s] nose." Then, at appellant's request, her boyfriend did the same to V. S. Appellant subsequently entered a plea of guilty to three felony counts of child molestation, and she was sentenced to ten years, two years of incarceration followed by eight years of probation. One of the conditions of appellant's probation is that she may not reside or be alone with any children under 16 years of age. Although DFACS had previously developed a reunification plan for appellant which was reviewed every six months by a citizen panel, it recommended termination of parental

rights after appellant pled guilty to molestation.

At the hearing on DFACS' petition to terminate appellant's parental rights, testimony was taken from seven witnesses, including appellant. A teacher who had taught V. S. and C. S. for approximately six months beginning in October 1994 testified, among other things, that V. S. was often dirty; that her hair was not brushed or washed; that V. S. and C. S. were inappropriately dressed and often sick; that V. S. had sores on her face; and that V. S. and C. S. had head lice.

The DFACS caseworker assigned to appellant's case from February to September 1995 testified that appellant received notice of the citizen panel reviews which took place while she was assigned to the case; that appellant was present at the panel review in July 1995 when termination of her parental rights was first recommended; that the children were developmentally delayed when they came into DFACS' care; that V. S. had serious dental problems caused by poor nutrition; that the children thrived in foster care and their developmental problems improved therein; that appellant's children had lived most of their lives in appellant's parents' trailer which had no air conditioning and was filthy and infested by flies and roaches; that one of the two bedrooms in the trailer was filled with caged animals including snakes, chickens, lizards, and rats; and that the conditions in and around the trailer were not safe for children.

The second DFACS caseworker, who began working on the case in September 1995, testified that a total of four citizen panel reviews had been conducted with regard to appellant's case while he was assigned to it; that appellant received notice of such citizen panel reviews; that the children had been in foster care throughout his involvement with the case, where they had done well; and that the children would be placed for adoption following termination of appellant's rights. This caseworker also testified that DFACS had received five previous referrals on the appellant and her family since 1984, most of which regarded the family's deplorable living conditions.

Appellant testified that she knew that termination of her parental rights had been DFACS' recommendation since the summer of 1995; that she had been incarcerated since February 2, 1995 but anticipated being released in February 1997; that the molestation for which she was convicted was the only time that she engaged in such behavior; that she molested the children at her boyfriend's prompting; that prior to her arrest she held three different jobs for no longer than three months since 1988; that her only continuous source of income was AFDC benefits; that her boyfriend whom she had lived with for one year sexually abused her and her children; that she did not try to stop her boyfriend because she was scared of him; that she knew V. S. had mental and physical deficiencies but that she had

sought assistance for these problems; that she completed a parenting class in prison; and that she intended to obtain full-time employment even though her education and skills were limited, although she had no idea where she might obtain work.

1. "Initially, it is noted that appellant has been convicted of felony offenses involving her two minor [children] as victims. The very nature of these offenses would, as a matter of law, negatively impact upon the parent-child relationship both now and in the future. Further, although imprisonment alone does not always compel a termination of parental rights, it will support such a ruling when adequate aggravating circumstances are shown to exist. The nature of and circumstances surrounding appellant's convictions per se [establish] the requisite aggravating circumstances in this case." (Citation and punctuation omitted.) *In the Interest of S. H.*, 204 Ga. App. 135, 139 (2) (418 SE2d 454) (1992).

Even without considering appellant's incarceration, there exists a totally independent basis for termination of her parental rights under the four criteria of OCGA § 15-11-81 (b) (4) (A). As appellant did not appeal the original order of the juvenile court finding that her children were deprived, she cannot now complain about that finding. *In the Interest of E. C.*, 225 Ga. App. 12, 14-15 (482 SE2d 522) (1997). Therefore, only the three remaining criteria must be considered.

The juvenile court had sufficient evidence to determine that appellant's inability to adequately care for her children was the cause of their deprivation. It was undisputed that the children were often dirty and had lice, that V. S. was developmentally delayed, that the children's living conditions were unsuitable, and that they suffered physical problems from malnutrition. Appellant's pattern of conduct in raising her children provides a clear and convincing basis for the finding that the children's deprivation was caused by her inability to care for them.

The evidence also supports the finding by the juvenile court that the deprivation is likely to continue. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. . . . The court was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue each time the children were reunited with their mother." (Punctuation omitted.) *In the Interest of R. N.*, supra at 204 (c).

The record also supports the finding that the children are likely to be seriously harmed by the continued deprivation. Both children suffered physical, emotional, and developmental setbacks while under their mother's care. When combined with the evidence regard-

ing the deplorable conditions of the trailer where they had lived for most of their lives, the evidence provides clear and convincing proof that reuniting these children with appellant will likely result in serious harm to them.

Finally, the juvenile court properly determined that termination of appellant's parental rights was in the best interests of V. S. and C. S. The same factors which prove a parent's inability to properly raise her children may also serve to show that termination of parental rights would be in the children's best interests. *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988). The appellant's claim that she has now changed her ways does not compel a different outcome. "[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Punctuation omitted.) *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (451 SE2d 804) (1994).

2. In her second enumeration of error, appellant contends that the juvenile court failed to impose the procedures contained in OCGA § 15-11-41, as amended in 1996, on the proceedings to terminate her parental rights under OCGA § 15-11-81. OCGA § 15-11-41, which is applicable to orders of disposition removing a child from the home of his parents and placing him in the State's care, provides, in relevant part: "At the time of each review of every case of a child in foster care in the custody of [DFACS], a representative of [DFACS] shall notify the court whether the division intends to proceed with the termination of parental rights at that time. If the division indicates that it does not intend to petition for the termination of parental rights at that time, the court may appoint a guardian ad litem and charge such guardian with the duty of determining whether termination proceedings should be commenced. In the event the review is conducted by citizen review panels, the panel shall transmit its report, including its findings and recommendations and those of the department, along with the department's proposed revised plan for reunification or other permanency plan, if necessary, to the court and the parents within five days after the review. Any party may request a hearing on the proposed revised plan in writing within five days after receiving a copy of such plan." OCGA § 15-11-41 (j).

Prior to the amendment of OCGA §§ 15-11-41 and 15-11-81 in 1996, we held that "OCGA § 15-11-81 regarding termination is a complicated statute that references many other statutes. If the legislature had intended it to be read in conjunction with OCGA § 15-11-41 (b), this intent would have been expressly stated." *In the Interest of A. M. B.*, 219 Ga. App. 133, 136 (464 SE2d 253) (1995). Although OCGA § 15-11-41, as amended, now makes reference to OCGA § 15-11-81, it does not do so in such a way to impose procedures applicable to orders of disposition and recommendations regarding reunifica-

tion, including OCGA § 15-11-41 (j), on OCGA § 15-11-81 termination proceedings. Furthermore, OCGA § 15-11-81 was amended at the same time as OCGA § 15-11-41, and no mention of OCGA § 15-11-41 is made in the new version of OCGA § 15-11-81. Accordingly, the two proceedings remain separate and distinct, and the juvenile court did not err by treating them as such.[2]

Even pretermitting the issue of whether the provisions of OCGA § 15-11-41 are applicable to OCGA § 15-11-81, appellant's claims must fail. It is undisputed that she knew since the summer of 1995 that DFACS' recommendation in her case was to forego the reunification plan originally set up for her and to seek termination of her parental rights. Apparently, appellant argues that the failure to receive repeated notification of what she already knew and the denial of an OCGA § 15-11-41 (j) reunification hearing raising the same issues as the OCGA § 15-11-81 termination hearing require a reversal of the termination proceedings. Appellant, however, has provided no evidence showing that she was harmed by such omissions even if she had a right to them. Although appellant indicates that she would have cooperated with reunification plans if given the chance, she has not shown that she could have provided evidence at an earlier reunification hearing not heard at the termination hearing which would have resulted in a different outcome. "It is an old and sound rule that error to be reversible must be harmful." (Punctuation omitted.) *Hunt v. State*, 204 Ga. App. 799, 802 (5) (420 SE2d 656) (1992).

Accordingly, appellant's claim is meritless.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED DECEMBER 18, 1997.

*Jerry W. Moncus*, for appellant.

*Thurbert E. Baker, Attorney General, Jeffrey L. Milsteen Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Michael R. McCarthy, Cynthia N. Johnson*, for appellee.

---

[2] This is not changed by the fact that DFACS, pursuant to OCGA § 15-11-41 (j), is now required to tell the juvenile court at each review for a deprived child in custody whether it intends to seek termination of parental rights. This provision appears to be for the benefit of the deprived child, not the parent, as the court is given the right to appoint a guardian ad litem to consider termination if DFACS decides not to pursue it. In other words, the court has the right to a second opinion when DFACS does not seek termination.