A99A0702, A99A0703. IN THE INTEREST OF S. B. et al., children (two cases).

(515 SE2d 209)

BLACKBURN, Judge.

Shirlene Bryant, the biological mother of Se. B., Je. B., Q. B., Ja. B., and Sho. B., appeals the juvenile court's termination of her parental rights, claiming in two enumerations of error that the evidence was insufficient to support the termination.[1] In a separate action, Clifford B. Lane, the putative father of Sho. B., appeals the termination of his parental rights, contending that the evidence was insufficient to support the termination and that the juvenile court failed to consider placement of Sho. B. with his relatives prior to awarding custody to the Department of Family & Children Services (DFACS). These related appeals have been consolidated herein for review.

On appeal, we must determine

whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.

(Citations and punctuation omitted.) *In the Interest of R. N.,* 224 Ga. App. 202 (480 SE2d 243) (1997).

---

[1] The putative fathers of Se. B., Je. B., Q. B., and Ja. B. do not appeal the termination of their rights.

## Case No. A99A0702

Bryant's four oldest children, Se. B., Je. B., Q. B., and Ja. B., were removed from her custody and placed in foster care in June 1995 because Bryant had no permanent housing, her children lacked adequate clothing and food, and Bryant allegedly was dealing drugs.[2] DFACS was then granted temporary custody on September 7, 1995. Sho. B. was born on September 10, 1995, and she was immediately taken into DFACS' custody. At that time, DFACS developed a reunification case plan with which Bryant never successfully complied. Specifically, among other failures, she never established a stable residence, she never obtained lasting employment, she failed to complete a drug and alcohol counseling program, and she failed to complete a parenting skills program. On September 14, 1998, the juvenile court terminated Bryant's rights to all of her children.

> Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is "present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). . . . In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.

*In the Interest of V. S.*, 230 Ga. App. 26, 27 (495 SE2d 142) (1997).

> As [Bryant] did not appeal the original order[s] of the juvenile court finding that her children were deprived, she cannot now complain about that finding. *In the Interest of E. C.*, 225 Ga. App. 12, 14-15 (482 SE2d 522) (1997). Therefore, only the three remaining criteria must be considered.

*In the Interest of V. S.*, supra at 29.

The evidence of record supports the juvenile court's determination that Bryant's inability to adequately care for her children was

---

[2] Previously, Se. B. and Je. B. had been found to be deprived in July 1990. At the time of their birth, Bryant threatened to kill them.

the cause of their deprivation. Bryant failed to retain permanent employment for any length of time, moved her children from motel to motel, and failed to provide them with proper care, clothing, or nutrition. Such conduct provides clear and convincing evidence that the children's deprivation resulted from her neglectful childrearing.

The record also supports a finding that the children's deprivation would be likely to continue in Bryant's care.

> Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. The court was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue [if] the children were reunited with their mother.

(Citation and punctuation omitted.) *In the Interest of R. N.*, supra at 204 (1) (c). In this case, Bryant was given numerous chances to modify her behavior in order to regain custody of her children. However, after years of dealing with DFACS, Bryant failed to find permanent employment, to establish a stable home for her children, and to satisfy the goals of her reunification plan.

The juvenile court's finding that Bryant's children would likely be harmed by the continued deprivation is also well founded. As Bryant had a history of neglecting her children, her efforts to attain reunification were lackluster, and she failed to comply with DFACS' case plan, the evidence provides clear and convincing proof that reuniting these children with Bryant would cause harm to them.

> Finally, the record supports a finding that the best interests of the children are served by termination of [Bryant's] rights. The same factors which show [her] inability to rear her children may also provide evidence that termination of her rights would be in the best interests of her children.

*In the Interest of D. W.*, 235 Ga. App. 281, 283 (509 SE2d 345) (1998). The evidence shows that Bryant's children have responded well in foster care and their health and mental skills are good. Although Bryant claims that she can now accommodate her children in her fiancé's home, the outcome of her appeal does not change.[3] " '[T]he decision as to a child's future must rest on more than positive

---

[3] Moreover, Bryant and her fiancé have experienced severe domestic problems. On one

promises which are contrary to negative past fact.' " *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (1) (451 SE2d 804) (1994). Therefore, the termination of Bryant's rights to her children is affirmed.

## Case No. A99A0703

The record also supports the termination of Lane's rights to his daughter, Sho. B. The evidence shows that, from 1993 to the present, Lane has been arrested for burglary, felony criminal damage to property, obstruction of an officer, aggravated assault, kidnapping, and attempted armed robbery. Lane was incarcerated at the time of Sho. B.'s birth, and, at the present time, Lane remains in prison. His tentative parole date is not until July 2001. To date, Lane has provided no support for Sho. B. and has had no contact with her at all. Based on Lane's criminal history, his incarceration, and the total absence of any relationship or communication with Sho. B., the trial court did not err in terminating his parental rights.

Lane contends that DFACS failed to follow the mandate of OCGA § 15-11-90 (a) (1), which provides:

> If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with the child's extended family or with a person related to the child by blood or marriage. . . . A placement shall be made under the terms of this paragraph only if such a placement is in the best interest of the child.

Lane argues that the trial court should have placed Sho. B. with his mother or his uncle, who testified that they would be willing to accept custody during the termination hearing. However, although both Lane's mother and his uncle knew of Sho. B.'s birth and subsequent removal from her mother's custody, neither one contacted DFACS or took any action to seek custody or support Sho. B. prior to the termination hearing. Moreover, Lane has never been married to Sho. B.'s mother, and he has provided no evidence that he is in fact her biological father. Because Lane has not shown that he is related to Sho. B. by blood or marriage, he cannot now complain that Sho. B. should have been placed with his relatives pursuant to OCGA § 15-11-90 (a) (1). Furthermore, Lane does not have standing to argue that Bryant's rights were violated under this statute for failure to

---

instance, Bryant reported to police that her fiancé had sexually battered her, among other things.

place Sho. B. with her relatives.[4] As such, it cannot be said that the juvenile court abused its discretion by not placing Sho. B. with Lane's relatives.

*Judgments affirmed. Beasley, P. J., and Barnes, J., concur.*

DECIDED MARCH 30, 1999 —
RECONSIDERATION DENIED APRIL 19, 1999 —

*Davis & Felton, Rodney E. Davis*, for appellant (case no. A99A0702).

*Robert F. Ness*, for appellant (case no. A99A0703).

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Williams, Sammons & Sammons, Walter G. Sammons, Jr.*, for appellees.

---

[4] Bryant does not make any such argument in her appeal.