534 S.E.2d 161 (2000)
243 Ga. App. 720
In the Interest of S.H.P. et al., children.
No. A00A1064.
Court of Appeals of Georgia.
April 27, 2000.
*162 Hassett, Cohen, Goldstein & Port, Jeffrey A. Bashuk, Atlanta, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, *163 William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, William R. Jenkins, Atlanta, for appellee.
ELDRIDGE, Judge.
The father of S.H.P. and V.R.P. appeals an order of the juvenile court terminating his parental rights.[1] Although appellant argues that the evidence was insufficient to support the termination, we find that the evidence presented amply supports the juvenile court's decision to terminate his parental rights to both children.
The termination of parental rights under OCGA § 15-11-81 involves a two-step analysis.
First, the court determines whether there is clear and convincing evidence of parental misconduct or that the parent is unable to care for and control the child. Second, the court determines whether termination is in the best interest of the child. In determining whether a parent's misconduct or inability warrants a termination of parental rights, a court must consider whether (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue or will not be remedied; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child.
(Citation omitted.) In the Interest of J.M.D., 221 Ga.App. 556-557, 472 S.E.2d 123 (1996).
On appeal, we must view the evidence in a light most favorable to the juvenile court's order and determine whether a rational trier of fact could have found by clear and convincing evidence that the parent's rights should have been terminated. We do not weigh the evidence and must defer to the trial judge as the factfinder.
(Citations and punctuation omitted.) In the Interest of K.A.C., 229 Ga.App. 254, 255, 493 S.E.2d 645 (1997).
Viewed in this light, the record shows that the appellant has a long history of involvement with criminal activity. The appellant has been arrested 32 times since 1982 and convicted of armed robbery, simple battery, theft by taking, deposit account fraud, battery, possession of tools for commission of a crime, theft by receiving stolen property, theft by shoplifting, and cruelty to children. Appellant was sentenced to time in jail for the 1982 armed robbery and, at the time of the termination hearing, was serving a two-year sentence for cruelty to children and theft by shoplifting.
S.H.P. was born on December 1, 1993, and V.R.P. was born on March 1, 1995. The mother has a third male child, born in 1981, who is not the child of appellant but who resided with the mother and appellant. The Department of Family & Children Services ("DFACS") first became involved with the family in 1994, prior to V.R.P.'s birth. In 1995, all three children were taken into DFACS' custody because of domestic violence between the appellant and the mother. The mother also had a history of drug abuse.
After the children came into the care of DFACS, appellant legitimated S.H.P. and V.R.P. Initially, appellant worked with the agency. The children were returned to both the appellant and the mother because both adults stated that they had obtained counseling and promised to continue with counseling in the future. In 1996, the mother left the home, leaving the three children with appellant. All three children were placed by DFACS in appellant's care. In 1997, all three children came back into the custody of DFACS because appellant had been arrested in April and July for two separate acts of physical abuse against his stepson; one of the acts resulted in the child's hospitalization. The mother had also returned to the home, unbeknownst to DFACS, and was involved in the use of illegal drugs.
DFACS developed a reunification plan for appellant with regards to S.H.P. and V.R.P. The 30-day case plan required the appellant to obtain violence counseling, complete a *164 course on parenting skills, contact and visit S.H.P. and V.R.P., and maintain a sense of stability for the family. A DFACS case-worker testified that appellant failed to comply with the reunification plan. Prior to the termination hearing, DFACS was never provided with any proof that the father completed any domestic violence counseling or parenting skills classes. While appellant contacted DFACS three times between 1997 and the date of the termination petition, appellant has not corresponded with S.H.P. or V.R.P., asked to visit with the children, or provided any financial support. Appellant did not become incarcerated until 1998 on the cruelty to children and theft by shoplifting charges. Held:
1. (a) As appellant "did not appeal the original order[s] of the juvenile court finding that his children were deprived, he cannot now complain about that finding." (Citations and punctuation omitted.) In the Interest of N.J.W., 233 Ga.App. 130, 133, 503 S.E.2d 366 (1998). Such unappealed deprivation orders establish that S.H.P. and V.R.P. are deprived within the meaning of OCGA § 15-11-81(b)(4)(A)(i). In the Interest of K.R.C., 235 Ga.App. 354, 510 S.E.2d 547 (1998).
Appellant argues that the court erred in taking judicial notice of previous orders that were not tendered into evidence. We disagree. A court may take "judicial notice of records in the same court." Petkas v. Grizzard, 252 Ga. 104, 108, 312 S.E.2d 107 (1984). "Because no appeals were taken from those orders, [appellant was] bound by the determinations. [Cit.]" In the Interest of J.M.D., supra at 558, 472 S.E.2d 123. As required by Graves v. State, 269 Ga. 772, 774, 504 S.E.2d 679 (1998), the juvenile court judge announced his intention to take judicial notice of such orders on the record, and appellant was given an opportunity to be heard on whether judicial notice should be taken. Thus, there was no error in the juvenile judge taking judicial notice of the deprivation orders previously entered in the same court, even though such orders had not been entered into evidence. See In the Interest of J.R., 202 Ga.App. 418, 422-423, 414 S.E.2d 540 (1992).
The case of In the Interest of B.K., 239 Ga.App. 822, 522 S.E.2d 255 (1999), which was cited by appellant in his brief, is distinguishable. In the Interest of B.K. dealt with a revocation of a juvenile's probation, which has different procedural guidelines than does a petition for termination of parental rights. Further, the judge in that case did not state on the record that he was taking judicial notice of the prior adjudication of delinquency and allow counsel an opportunity to be heard on the matter, as required by Graves v. State, supra.
(b) Further, the juvenile court had sufficient evidence to determine that appellant's inability to adequately care for his children was the cause of their deprivation.
In determining whether a child is without proper parental care and control, the juvenile court was authorized to consider the conviction of the parent of a felony and imprisonment therefor which [has] a demonstrable negative effect on the quality of the parent-child relationship. OCGA § 15-11-81(b)(4)(B)(iii). A conviction of a crime and incarceration [do] not always compel a termination of parental rights but will support such a ruling when adequate aggravating circumstances are shown to exist.
(Citation and punctuation omitted.) In the Interest of N.J.W., supra at 133, 503 S.E.2d 366.
It is undisputed that throughout the children's lifetime, appellant has consistently been involved in criminal activity. Since 1982, he has been arrested thirty-two times and has been convicted of nine offenses, of which at least five were felonies. Further, appellant is currently imprisoned for physically abusing his stepson on two occasions. See OCGA § 15-11-81(b)(4)(B)(v) (evidence of past physical, mental, or emotional neglect of the child or of another child by the parent can be considered in determining whether lack of proper parental care and control is the cause of the deprivation). Additionally, since DFACS assumed custody of the children and they were placed in foster care, appellant has failed to comply with the reunification plan. Prior to the termination hearing, *165 appellant had not provided DFACS with proof that he had obtained violence counseling or attended the required parenting classes. Both prior to and since his incarceration, appellant failed to visit or correspond with the children and did not provide any financial support. Such evidence provides a clear and convincing basis for the finding that the children's deprivation was caused by appellant's inability to care for them.
(c) The evidence also supports the finding by the juvenile judge that the deprivation is likely to continue. "Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue." (Citation and punctuation omitted.) In the Interest of V.S., 230 Ga.App. 26, 29, 495 S.E.2d 142 (1997). The court was entitled to infer from the evidence that the same pattern of deprivation would continue if the children were reunited with appellant.
While appellant testified that he had completed both domestic violence and parenting classes, as well as other classes, while in prison, appellant did not start any of these classes until the month prior to the termination petition being filed. This late activity does not negate the years of appellant's previous neglect of his children. While appellant testified that he hoped to be released from prison in January 2000, such release date was tentative. Appellant did not produce any evidence that, on release from prison, he would be able to establish a stable home and find steady employment. Appellant could testify only that he hoped he would be able to reestablish the grocery store and detail shop he was operating prior to his imprisonment. Such evidence supports the conclusion that the deprivation of the children will likely continue into the future.
(d) We also find clear and convincing evidence that the children are likely to be seriously harmed by the continued deprivation. Appellant will be totally unable to care for the children prior to his release from prison. The DFACS caseworker testified that when the children were removed from their first foster placement due to the terminal illness of the foster parent, S.H.P. started to show signs of foster care drift. She was unable to focus and had difficulty relating to adults and her peer group. The case-worker further testified that, for the past eighteen months, appellant's two children, as well as their half-brother, have been together in foster care. All three children have bonded with their foster parents and appear to be "stabilized."
2. Finally, "[i]n determining that terminating [appellant's] parental rights would serve the best interests of the children, the court properly concerned itself with the need for stability in their lives." In the Interest of R.N., 224 Ga.App. 202, 205, 480 S.E.2d 243 (1997). The children are presently in foster care and are doing well. All three children have realistic prospects of being adopted as a sibling group. When appellant is released from prison, he will emerge as a single parent with no job or home and a history of unabated criminal activity that often included violence. While appellant testified that he feels that the classes he has taken have equipped him to be a proper parent, "the decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) In the Interest of D.I.W., 215 Ga.App. 644, 646, 451 S.E.2d 804 (1994). Further, "[t]he same factors which prove a parent's inability to properly raise [his] children may also serve to show that termination of parental rights would be in the children's best interests. [Cit.]" In the Interest of V.S., supra at 30, 495 S.E.2d 142. Thus, there was clear and convincing evidence that termination of appellant's parental rights is in the children's best interests.
Judgment affirmed.
BLACKBURN, P.J., and BARNES, J., concur.
NOTES
[1] The mother's parental rights to three of her children, including S.H.P. and V.R.P., were also terminated, as were the rights of the two possible putative fathers of the third child. Neither the mother nor the putative fathers have appealed the termination of their parental rights.