A00A2538. IN THE INTEREST OF J. L. H. et al., children.
(544 SE2d 520)

BLACKBURN, Chief Judge.

Appellant, the putative father of J. L. H., T. L. H., T. P., S. P., and A. D. P., appeals the juvenile court's termination of his parental rights, claiming that the evidence was insufficient to support the termination.[1] As there is clear and convincing evidence that supports the termination, we affirm the juvenile court's decision.

On appeal, we must determine

whether, after reviewing the evidence in a light most favorable to the lower court's judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.

(Citation and punctuation omitted.) *In the Interest of R. N.*[2]

The record shows that, over a period of four years, the Department of Family & Children Services (DFACS) attempted to work with appellant and his wife to create a suitable environment for the children to no avail. During this time, appellant was in and out of jail on numerous criminal charges, including possession of burglary

---

[4] *Hale v. State*, 188 Ga. App. 524 (1) (373 SE2d 250) (1988).
[1] The parental rights of the children's mother were also terminated at the same hearing; however, she is not a party to this appeal.
[2] *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243) (1997).

tools, battery, bail jumping, and violation of probation. Indeed, at the time of the termination hearing, appellant was incarcerated. In addition, appellant was addicted to cocaine. After years of attempts at reunification, the parental rights of appellant and his wife were finally terminated on June 14, 2000.

> Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is "present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81 (a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). . . . In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.

*In the Interest of V. S.*[3]

There is no issue as to whether appellant's children were deprived. The record contains previous orders of the juvenile court containing findings of deprivation, and, in the termination proceedings, the juvenile court took judicial notice of these orders. See *In the Interest of J. L. Y.*[4] Moreover, clear and convincing evidence adduced at the termination hearing supports a finding of deprivation, as there was testimony that the children were kept in unsuitable living conditions without appropriate food, clothing, or care.

Linda Coe, the DFACS worker who handled appellant's case from March 17, 1997, until July 10, 1998, testified that appellant's home was unsafe, unsanitary, and inadequately stocked with food. In addition, the children's hygiene was not properly maintained, and their daily needs were not being met. Although a family service worker was assigned to appellant's home to assist with child care needs and housekeeping, appellant and his wife were not cooperative and did not improve the conditions in their home. And, despite the fact that DFACS provided appellant and his wife with a washing machine and dryer, as well as furniture for the home, the children were still kept in soiled clothing and inadequately cared for.

Henry Fliggins, another DFACS employee, conducted an investi-

---

[3] *In the Interest of V. S.*, 230 Ga. App. 26, 27 (495 SE2d 142) (1997).
[4] *In the Interest of J. L. Y.*, 184 Ga. App. 254 (1) (361 SE2d 246) (1987).

gation of appellant's home in July 1998 and discovered that appellant had sold the washer, dryer, refrigerator, stove, and all of the furniture in the home, including the children's beds. A likely motivation for appellant's actions was to raise money to purchase drugs.

Willie Armstrong, another DFACS worker who handled appellant's case from July 1998 through December 1998, testified that, despite DFACS counseling, appellant and his wife continued to pawn away their possessions and were not properly caring for their children. He also noted that, despite DFACS' efforts as early as 1996, the conditions in which the children were raised had not improved.

Teresa Goodson, the DFACS employee who took over appellant's case in April 1999, testified that a reunification plan had been developed for appellant and his wife. The goals of the plan were: (1) appellant and his wife would become and remain drug free; (2) appellant and his wife would learn appropriate parenting skills; (3) appellant and his wife would seek mental health counseling; (4) appellant and his wife would satisfy the children's support obligations; and (5) appellant and his wife would provide the children with a stable, nurturing home. Goodson further testified that appellant did not follow this plan because: (1) there was great concern about his mental health; (2) he did not complete a parenting course; (3) he did not complete a drug treatment program; (4) he did not fulfill his support obligations; and (5) he did not maintain regular visitation with the children.

Dr. Wallace Kennedy, a psychologist, deposed that appellant informed him that he often used physical force on the children's mother. Kennedy further opined that appellant was subject to delusions of persecution and that appellant did not place a high priority on reunification with his children.

Based on this clear and convincing evidence of deprivation, the juvenile court properly determined that appellant's inability to adequately care for the children was the cause of such deprivation. As discussed above, appellant abused drugs, sold the children's furnishings for questionable reasons, and committed numerous crimes which resulted in multiple incarcerations. Appellant's conduct, therefore, provides clear and convincing evidence that the children's deprivation originated from his neglectful child rearing and inappropriate behavior.

In addition, the evidence supports the juvenile court's finding that the deprivation is likely to continue.

> Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. The court

was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue [if] the children were reunited with their [father].

(Citation and punctuation omitted.) *In the Interest of R. N.*, supra at 204 (1) (c).

The record also supports a finding that the children are likely to be harmed by the continued deprivation. All of the children were improperly cared for under appellant's neglectful supervision, and they have been thriving under foster care. When combined with his pattern of improper child rearing, appellant's constant incarceration, failure to comply with DFACS case plans, and general inability to care for the children provide clear and convincing proof that reuniting the children with their father would be detrimental to them.

Finally, the record amply supports a finding that termination of appellant's parental rights is in the best interests of the children. The same factors indicative of a parent's inability to properly care for his children may also prove that termination of his rights is in the best interests of the children. *In the Interest of G. K. J.*[5] And, although appellant now claims that he will change his errant ways, the outcome of this case remains the same. "[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Punctuation omitted.) *In the Interest of D. I. W.*[6]

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED JANUARY 19, 2001.

*B. Samuel Engram, Jr.,* for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Paula T. Hanington,* for appellee.

---

[5] *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988).
[6] *In the Interest of D. I. W.*, 215 Ga. App. 644, 646 (451 SE2d 804) (1994).