546 S.E.2d 882 (2001)
248 Ga. App. 522
In the Interest of R.W. et al., children.
No. A01A0606.
Court of Appeals of Georgia.
March 8, 2001.
*883 Mark S. Martin, Warner Robins, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Assistant Attorney General, Walter G. Sammons, Jr., for appellee.
BLACKBURN, Chief Judge.
Appellant, the biological mother of R.W., Bt. W., and Bd. W., appeals the juvenile court's termination of her parental rights, contending that: (1) the evidence was insufficient to support the termination; (2) the trial court erred by considering appellant's lack of monetary support as one of the grounds for termination; and (3) the trial court improperly placed the children with the Department of Family & Children Services for adoption without considering placement with a family member.[1] For the reasons set forth below, we affirm.
1. Appellant first contends that the evidence was insufficient to support the juvenile court's termination of her rights. On appeal, we must determine
whether, after reviewing the evidence in a light most favorable to the lower court's *884 judgments, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.
(Citations and punctuation omitted.) In the Interest of R.N.[2]
The record shows that, on July 28, 1994, the Juvenile Court of Houston County found the children to be deprived, which their mother admitted, and DFACS took the children into custody. The original deprivation petition was filed by DFACS after it learned that the children's father had beaten five-month-old R.W. so severely that she had broken ribs and brain damage causing cerebral palsy. In addition, there was also some evidence that another one of the children had been physically abused by the father as well.
At the time that the children were found to be deprived, a case plan for reunification was developed for appellant. Among other things, this plan indicated that appellant needed to maintain contact with the children and learn to use nonharmful methods of discipline. In addition, appellant was required to undergo psychological testing to determine her ability to protect the children from further abuse.
The children remained in DFACS' custody for the following five years while appellant attempted to satisfy the goals of her reunification case plan. DFACS, however, was never satisfied that appellant had developed the skills necessary to parent the children. Finally, DFACS petitioned for the termination of appellant's rights, and, as of June 2, 1999, the juvenile court terminated appellant's parental rights, finding that her mental retardation prevented her from properly caring for her children and that she had failed to provide for their maintenance and support.
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is "present clear and convincing evidence of parental misconduct or inability." OCGA § [15-11-94](a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § [15-11-94](b)(4)(A).... In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
In the Interest of V.S.[3]
No issue remains as to whether the children in this case are deprived. The record contains prior orders of the juvenile court containing findings of deprivation, and, in the termination proceedings, the juvenile court took judicial notice of these orders. See In the Interest of J.L.Y.[4] Moreover, appellant admitted that the children were deprived from the outset of this matter, and the record provides clear and convincing evidence that the children were given insufficient care and maintenance.
Nancy Moran, a DFACS caseworker, testified that the children have a number of behavioral problems. Moran further testified that she had to initiate a lot of visitations with the children, and appellant generally was unable to schedule the visits on her own and arrange for transportation. Although appellant did complete parenting classes, when she visited the children, they were unruly, and Moran felt that their safety could be in jeopardy. Appellant could not control the children's behavior or adequately deal with their emotional problems.
*885 At the hearing, appellant admitted that she no longer visited R. W., and she stated that she had no objection to R.W. being placed for adoption by DFACS. She also admitted that it took her three and one half years to complete the parenting class required by her case plan. Finally, appellant conceded that setting up visitation with the children was her responsibility, and the evidence showed that appellant had rarely visited her children for almost a year. And, although appellant contended that she had attempted to schedule visits, she failed to leave a current number with DFACS so that they could call her back.
This evidence supports the juvenile court's determination that the children's deprivation is likely to continue.
Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. The court was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue [if] the children were reunited with their mother.
(Citation and punctuation omitted.) In the Interest of R.N., supra at 204(1)(c), 480 S.E.2d 243.
The record also supports a finding that the children are likely to be harmed by the continued deprivation. As discussed above, Moran testified that, in appellant's presence, the children acted wildly and their safety was at risk. The evidence showed that reuniting the children with appellant could be detrimental to them. Moreover, the evidence also indicates that the children's behavioral problems have started to improve while in foster care.
Finally, the record supports a finding that termination of appellant's parental rights is in the best interests of the children. The same factors which show a parent's inability to properly care for her children may also prove that termination of her parental rights is in the best interests of the children. In the Interest of G.K.J.[5] And, although appellant now pledges to be more attentive of the children's needs, "the decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Punctuation omitted.) In the Interest of D.I.W.[6]
2. Appellant next contends that the trial court erred by considering her failure to provide the children with monetary support as one of the grounds for termination. OCGA § 15-11-94(b)(4)(C) provides:
[W]here the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i)[t]o develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii)[t]o provide for the care and support of the child as required by law or judicial decree; and (iii)[t]o comply with a court ordered plan designed to reunite the child with the parent.
As discussed above, the evidence supports a finding that appellant failed to satisfy any one of these three requirements. Nevertheless, appellant argues that the trial court improperly considered her lack of monetary support for her children, arguing that a court had never issued an order requiring this support. A parent, however, has a statutory duty to support her children, with or without a court order. OCGA § 19-7-2. Appellant has inexcusably failed to live up to this duty, leaving DFACS to support her children for almost five years. The trial court did not err in considering this lack of care and support in ruling on this case.
3. Finally, appellant contends that the trial court erred by placing the children directly with DFACS for adoption without *886 first considering placement with a family member. OCGA § 15-11-103(a)(1). Appellant, however, made no objection to placement in the court below, and she has thus waived her right to raise this argument for the first time on appeal. In the Interest of M.C.[7]
Judgment affirmed.
POPE, P.J., and MIKELL, J., concur.
NOTES
[1] The children's father does not appeal the termination of his rights.
[2] In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
[3] In the Interest of V.S., 230 Ga.App. 26, 27, 495 S.E.2d 142 (1997).
[4] In the Interest of J.L.Y., 184 Ga.App. 254(1), 361 S.E.2d 246 (1987).
[5] In the Interest of G.K.J., 187 Ga.App. 443, 444(2), 370 S.E.2d 490 (1988).
[6] In the Interest of D.I.W., 215 Ga.App. 644, 646, 451 S.E.2d 804 (1994).
[7] In the Interest of M.C., 243 Ga.App. 707(2), 534 S.E.2d 442 (2000).