549 S.E.2d 125 (2001)
248 Ga. App. 675
In the Interest of F.C., et al., children.
No. A01A0780.
Court of Appeals of Georgia.
March 20, 2001.
*127 Anne M. Lugo, Sheryl D. Fambrough, for appellant.
Thurbert E. Baker, Atty. Gen., Dennis R. Dunn, Deputy Atty. Gen., William C. Joy, Senior Asst. Atty. Gen., Shalen S. Nelson, Asst. Atty. Gen., John L. Welsh II, Lawrenceville, for appellee.
*126 MIKELL, Judge.
The biological mother of F.C., A.C., and H.A.[1] appeals the juvenile court's order terminating her parental rights.[2] Having determined that the evidence supports the termination and that no reversible error occurred, we affirm.
On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost.[3] We do not weigh the evidence or determine the credibility of witnesses, but defer to the trial court's fact-finding and affirm unless the evidence fails to satisfy the appellate standard of review.[4]
So viewed, the evidence shows that in April 1998, the mother, who resided in Ohio, left the state with her three children to visit with her brother in Georgia. After two weeks, the brother asked them to leave. On April 22, the mother was arrested for public drunkenness and disorderly conduct,[5] and the children were placed in the emergency custody of the Gwinnett County Department of Family & Children Services (DFACS). DFACS developed a reunification case plan that required the mother to improve her parenting skills, remain alcohol-free, maintain a stable lifestyle, cooperate and maintain contact with DFACS, and cooperate with the Child Support Enforcement Unit (CSE).[6] The mother reviewed, and agreed to, the reunification case plan goals. On May 28, 1998, the juvenile court incorporated the goals into a court order.
Shortly thereafter, the mother moved back to Ohio, leaving the children in Georgia in foster care. A DFACS caseworker testified that she did not hear from the mother again until August. By then, F.C. and A.C. had been placed with their biological father in Ohio, but H.A., who had a different father, remained in foster care in Georgia. The mother requested that H.A. be placed in a foster home in Ohio. The caseworker explained that DFACS does not place children in out-of-state foster homes and instead referred the mother to an Ohio agency and assigned an Ohio caseworker to assist with reunification.
On May 4, 1999, the juvenile court determined, after a hearing, that the mother had failed to progress on the case plan, that *128 DFACS had made reasonable efforts to reunite the family, and that DFACS was permitted to discontinue reunification efforts. The following month, DFACS filed a petition to terminate the mother's parental rights.
At the termination hearing in March 2000, a DFACS caseworker, who had been involved with the case from May 1998 to May 1999, testified that the mother had not completed the goals of her case plan. Specifically, the mother had failed to maintain contact with DFACS; had missed two scheduled appointments to obtain an alcohol and drug assessment before leaving Georgia; and, after returning to Ohio, the mother provided to DFACS an alcohol and drug assessment with "inconclusive" results. The caseworker testified that the mother failed to follow up, despite DFACS' request, and that the mother also failed to provide any documentation confirming that she had completed a parenting skills course. Another DFACS caseworker testified that although the mother reported that she worked 55 hours per week, the total amount of child support that she paid between April 1998 and March 1999 was only $119.34 per child. The mother never requested financial assistance or claimed that financial difficulties prevented her from completing her case plan goals.
The mother testified that since returning to Ohio, she had moved into an efficiency apartment, which she shared with a male roommate. She described the apartment as "one big room with a hallway and a restroom with a shower." Although the mother testified that she had financially supported and maintained contact with F.C. and A.C. since they were placed with their father in Ohio, she had not seen them since December of 1999. She had not visited H.A. since leaving Georgia in May 1998 and had spoken to her only once, in February 2000.
A clinical psychologist testified that when she began treating H.A. in September 1999, the child was "having a lot of difficulty in school, acting out aggressively, hitting other children." After receiving treatment and moving to a new home, H.A. had "done very well both at home and at school." The psychologist testified that for about two weeks after H.A.'s telephone conversation with her mother, however, H.A. was "very anxious" and had "increased difficulties at school."
The guardian ad litem recommended termination. On May 26, 2000, the juvenile court terminated the mother's parental rights to F.C., A.C., and H.A.
1. In two enumerations of error, the mother contends that the evidence is insufficient to support the termination of her parental rights. We disagree.
Before terminating parental rights, a juvenile court must employ a two-prong test.[7] First, the juvenile court must make a finding of parental misconduct or inability, which is proved by clear and convincing evidence that: (1) the children are deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the children.[8] If all four factors are met, the court must then decide whether the termination would be in the best interests of the children, considering their physical, mental, emotional, and moral condition and needs.[9]
As for the first prong of the termination analysis, ample clear and convincing evidence of the four factors established parental misconduct or inability in this case. First, the juvenile court declared the children deprived in orders issued in April and May 1998. The mother is bound by those determinations because she did not appeal them.[10]
Second, the deprivation orders, combined with the mother's failure to comply with the case plan, her history of alcohol abuse, and the testimony in the court below, show that *129 the mother's lack of parental care or control caused the children's deprivation.[11]
Third, in determining whether the children's deprivation is likely to continue, the juvenile court may consider the parent's past conduct.[12] Furthermore, "`the decision as to a child's future must rest on more that positive promises which are contrary to negative past fact.'"[13] The record before us belies the mother's claim that she complied with the reunification plan. In addition, the mother has offered no plan for adequately housing or otherwise caring for her children. Thus, sufficient clear and convincing evidence existed from which the juvenile court could have concluded that the deprivation was likely to continue.
Finally, the evidence demonstrated the mother's unwillingness or inability to comply with significant requirements of the reunification plans and to otherwise provide for proper care for the children. Thus, clear and convincing evidence showed that continued deprivation likely would harm F.C., A.C., and H.A.[14]
As to the second prong, we conclude that the evidence supported a finding that termination of the mother's parental rights served the children's best interests.[15] In making that determination, the court correctly considered the children's need for a stable home environment and the detrimental effects of prolonged foster care. "Children need permanence of home and emotional stability or they are likely to suffer serious emotional problems."[16] In addition, the same factors that show parental misconduct or inability can support a finding that termination of parental rights is in the children's best interests.[17]
Having reviewed the juvenile court's orders and the entire record, we conclude that sufficient clear and convincing evidence supports the juvenile court's termination of the mother's parental rights.
2. The mother contends that the juvenile court abused its discretion in finding that DFACS had made reasonable reunification efforts. She claims that communication between DFACS and the Ohio Department of Human Services was inadequate, that DFACS prematurely ceased working to reunite her with her children, that only a few of the provisions of the Interstate Compact on the Placement of Children[18] were complied with, and that had DFACS placed H.A. in a foster home in Ohio, she would have had a more realistic opportunity to meet the reunification goals.
OCGA § 15-11-58(a) provides that the juvenile court
shall ... determine as a finding of fact whether reasonable efforts were made by [DFACS] and any other appropriate agencies to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from that child's home, and to make it possible for the child to return safely to the child's home.
However, OCGA § 15-11-58 does not impose upon termination proceedings the same procedures that apply to disposition orders and recommendations regarding reunification.[19] We do note that such a finding of fact is required in relation to deprivation orders,[20] but the mother did not appeal the juvenile court's findings of deprivation.
*130 3. The mother next contends that she was denied her right to effective assistance of trial counsel. To prevail on this claim, the mother must show that (1) counsel's performance was deficient, and (2) the outcome would have been different but for that deficient performance.[21] We need not address both prongs of this test if the showing on one prong is insufficient, nor must we address them in any particular order.[22]
The mother asserts that one of the attorneys who represented her during the reunification phase of the case failed to forward to DFACS certain documents, including her paycheck stubs, an evaluation form from an Ohio drug and alcohol recovery center, and pictures of her Ohio apartment. She argues that the juvenile court would have reached a different conclusion if the attorney had timely provided DFACS and the court with this evidence of her compliance with the reunification plan. We disagree.
Even assuming that the attorney received those documents and failed to forward them, the mother cannot demonstrate that she was harmed thereby, as the documents were admitted into evidence at the termination hearing.
The mother next complains that the attorney failed to appeal the juvenile court's deprivation orders and its review order, entered May 13, 1998, which incorporated the goals set forth in the reunification case plan. However, this contention fails, because the mother has not pointed to any evidence in the record showing a basis for reversing the juvenile court's orders.
Finally, the mother complains that her attorney did not attend one of the citizens review panel meetings and at least one juvenile court hearing. The mother's counsel was not deficient for failing to attend one of the citizens review panel meetings. Regarding the attorney's absence from a juvenile court hearing, the record shows that another attorney appeared on behalf of the mother's attorney. Moreover, the mother has failed to specify how the attorney's presence at the hearing would have affected the result of that proceeding.
4. The mother next contends that her equal protection rights afforded by the U.S. Constitution and the Georgia Constitution were violated. She claims that her parental rights were terminated due to her poverty. In support of this argument, she relies on her testimony regarding her financial circumstances. However, the mother's equal protection challenge was not raised and ruled upon in the trial court; thus, it presents nothing for review in this Court.[23]
5. The mother further contends that the juvenile court violated her due process rights under the Georgia Constitution and the Sixth and Fourteenth Amendments of the U.S. Constitution by allowing a home study report prepared by the Ohio Department of Human Services Child Care & Family Services Division to be considered without affording her counsel the right to cross-examine its author. However, under OCGA § 15-11-56(c),
in all proceedings involving custody of a child, all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition. The parties or their counsel shall be afforded an opportunity upon request to examine and controvert written reports so received and to cross-examine individuals making the reports, except that portions of such reports not relied on by the court in reaching its decision which, if revealed, would be prejudicial to the interests of the child or any party to the proceeding may be withheld in the court's discretion.[24]
In this case, the termination petition alleged that "there are no appropriate relatives available or willing to care for [H.A.] There are *131 appropriate relative[s] to care for F.A. and A.C. and [they] are currently placed with the relative[s]."
The record shows that during closing arguments on the placement issue, counsel for DFACS tendered the home study "for the court to consider if it does decide to terminate the mother's parental rights and would need a home study in Ohio of the [maternal grandparents] to determine a placement for" H.A. When the mother's attorney objected, the juvenile court ruled that it would not consider the home study until it ruled on the merits of the termination petition. The court then offered the mother's attorney an opportunity to respond to the home study. Although counsel stated that she wished to respond, she made no further objection.
Thereafter, in its orders of May 26, 2000, and amended orders of May 31, 2000, and June 7, 2000, the juvenile court terminated the mother's parental rights to the three children. The court placed F.C. and A.C. with their biological father but found there were no appropriate relatives for H.A.'s placement. The court stated that it would consider the home study report and scheduled a hearing for June 19, 2000, during which the mother or her parents would have an opportunity to respond or otherwise present evidence pertaining to H.A.'s placement. The record shows that the report was not considered with regard to the termination of the mother's rights; rather, it was submitted for consideration in determining H.A.'s placement in the event of termination.[25] The record also demonstrates that the juvenile court afforded the parties an opportunity to examine and controvert the report and to cross-examine its author. Accordingly, there was no error.[26]
6. Finally, we will not consider the mother's argument, made for the first time on appeal,[27] that DFACS violated its own rules and regulations in its handling of this case.
Judgment affirmed.
BLACKBURN, C.J., and POPE, P.J., concur.
NOTES
[1] The children were born on October 12, 1991, October 27, 1992, and February 2, 1994, respectively.
[2] The parental rights of H.A.'s alleged putative father were also terminated, but he is not a party to this appeal.
[3] OCGA § 15-11-99, formerly OCGA § 15-11-86; Blackburn v. Blackburn, 249 Ga. 689, 694(2), 292 S.E.2d 821 (1982).
[4] In the Interest of R.N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
[5] In Ohio, the mother had been arrested for operating a motor vehicle under the influence and had been convicted of one count of child endangerment.
[6] The plan required the mother to attend and complete agency-approved parenting classes; to obtain an alcohol and drug assessment and follow the recommendations of the evaluation; to obtain and maintain suitable housing and verify income used for housing expenses; to keep the caseworker informed of her address and employment; and to maintain contact with CSE.
[7] OCGA § 15-11-94(a), formerly OCGA § 15-11-81(a).
[8] OCGA § 15-11-94(b)(4)(A)(i)-(iv); In the Interest of R.N., supra at 202, 480 S.E.2d 243.
[9] OCGA § 15-11-94(a); In the Interest of R.N., supra.
[10] In the Interest of J.M.D., 221 Ga.App. 556, 558, 472 S.E.2d 123 (1996).
[11] See OCGA § 15-11-94(b)(4)(B).
[12] In the Interest of R.N., supra at 204(1)(c), 480 S.E.2d 243.
[13] (Citation omitted.) In the Interest of D.I.W., 215 Ga.App. 644, 646(1), 451 S.E.2d 804 (1994).
[14] See, e.g., In the Interest of D.B., 242 Ga.App. 763, 531 S.E.2d 172 (2000).
[15] In the Interest of J.O.L., 235 Ga.App. 856, 858, 510 S.E.2d 613 (1998).
[16] In the Interest of S.T., 244 Ga.App. 86, 88-89(2), 534 S.E.2d 813 (2000).
[17] In the Interest of V.M.T., 243 Ga.App. 732, 736-737, 534 S.E.2d 452 (2000).
[18] OCGA § 39-4-1 et seq.
[19] In the Interest of V.S., 230 Ga.App. 26, 30-31(2), 495 S.E.2d 142 (1997).
[20] In the Interest of A.M.B., 219 Ga.App. 133, 136, 464 S.E.2d 253 (1995).
[21] In the Interest of A.H.P., 232 Ga.App. 330, 334(2), 500 S.E.2d 418 (1998).
[22] Ponder v. State, 201 Ga.App. 388, 389(1), 411 S.E.2d 119 (1991).
[23] Raskin v. Wallace, 215 Ga.App. 603, 604(1), 451 S.E.2d 485 (1994).
[24] OCGA § 15-11-56(c), formerly OCGA § 15-11-33(d).
[25] See OCGA § 15-11-103, formerly OCGA § 15-11-90, concerning the placement of a child following a termination order.
[26] In the Interest of J.C., 242 Ga. 737, 741(3), 251 S.E.2d 299 (1978) (interpreting Code Ann. § 24A-2201 (a), currently OCGA § 15-11-56(c)); see also In the Interest of M.L.P., 236 Ga.App. 504, 510(2), 512 S.E.2d 652 (1999).
[27] City of Warner Robins v. Rushing, 259 Ga. 348, 349, 381 S.E.2d 38 (1989).