A03A0452. IN THE INTEREST OF J. B., a child.
(581 SE2d 367)

BARNES, Judge.

The mother of J. B., a boy born January 29, 1998, appeals the juvenile court's determination that J. B. is deprived. She contends that the court erred by allowing witnesses for the Department of Family and Children Services (DFCS) to remain in the courtroom after she invoked the rule of sequestration and then testify, and by requiring her to present her evidence before DFCS rested its case. For the reasons that follow, we find no error.

The evidence shows that a DFCS caseworker visited J. B.'s home in response to a telephone call from someone expressing concern over the boy. The boy's mother answered the door to the trailer with a baby in her arm, and the caseworker asked to see J. B. The mother

untied the door to his bedroom, explaining that the child had asked her to keep his door tied shut, and once the door opened J. B. "came flying through" the living area straight to the refrigerator. He did not acknowledge the caseworker's presence, and began eating a cup of corn from the refrigerator with his hands. The child's bed had a filthy, bloody sheet on it; when questioned, the mother said she was unaware there were bloodstains on the sheet. The caseworker inspected the two children, and while the baby was unmarked, the boy was bruised from head to toes with lacerations and bite marks in several places. The mother explained that she had bitten the child once as discipline after he had bitten her first, and the caseworker told her to follow them to the sheriff's department.

Meanwhile, J. B. was begging for food, so the caseworker made him a peanut butter sandwich, which he "gulped down." The mother had removed a pizza from the oven and was trying to put it in the refrigerator when J. B. began tearing pieces off, running with them from corner to corner and swallowing without chewing. During the hearing, the caseworker identified numerous photographs of the boy taken subsequently at the sheriff's department, which documented bruises under J. B.'s left armpit, right thumb, chest, stomach, cheeks, chin, forehead, shoulder, inside and outside his thigh, right foot, right arm, and middle finger, as well as lacerations to his ear, the back of his knee, and three places on his head, and bite marks on his hand and chest.

A pediatrician who is an expert in child abuse evaluation examined J. B. the next day, and testified that testing revealed no abnormality that would cause the child to bruise easily. She also described his numerous bruises, lacerations, and bite marks, and testified that children often bruise their shins while playing, so injuries there did not arouse her suspicion. Also, children have heavy heads, so if they fall, they often sustain lumps on the back of their head or on their forehead. But the presence of lacerations on J. B.'s scalp concerned her because the fact that the skin was broken implied that a great deal of force was used. Additionally, he had a bald spot surrounding one of the cuts in the back of his head, as if his hair had been pulled out. She was concerned that his cheeks were bruised, which again implied that a fair amount of force was used. The linear mark on his chest and curved, scabbed mark on his back suggested he was hit with an implement, and the ear laceration could not have been caused by a baby's long fingernails, which was the mother's explanation. The pediatrician concluded that J. B.'s injuries were too numerous to have been caused by normal child play, and she concluded that he had been abused.

The trial court found that the child had been a victim of physical abuse while in his mother's custody. It noted that, during the trial,

the mother initially refused to look at the boy's pictures, then explained that she cried when she looked at them because he was hurt, which was inconsistent with her explanations of his injuries. The court further found not credible the mother's testimony that she was unaware of J. B.'s injuries because he bathed and dressed himself. The court concluded that clear and convincing evidence established that the child was deprived.

1. The mother asserts that the trial court erred in allowing DFCS witnesses to remain in the courtroom after she invoked the rule of sequestration. At the start of the deprivation hearing, the mother invoked the rule, and DFCS responded that it thought its three witnesses, who were two caseworkers and a placement center employee, should be allowed to remain, and that it did not intend to call the foster parents, who were also present in the courtroom. The mother's only response was that if the foster parents stayed, they should not later be called as witnesses. The judge said, "All right," and directed the parties to make their opening statements.

The department's first witness testified, and both before and after the lunch break the mother objected to having the department's other witnesses testify because they had remained in the courtroom after she invoked the rule. The judge overruled the objection on the ground that all of the witnesses were agents of the department, and all of the information they would give was already in the record for purposes of the placement assessment.

OCGA § 24-9-61 provides that "either party shall have the right to have the witnesses of the other party examined out of the hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude a witness."

> The purpose of the rule of sequestration is to prevent a witness who has not testified, or who has not completed his or her testimony, from overhearing and having his or her testimony affected by the testimony of another witness. By sequestration, the testimony of the witnesses retains any inconsistencies which may exist, the recollections of the witnesses are not unduly refreshed by other witnesses, and the witnesses cannot shape their testimony to support or dispute the testimony of other witnesses.

(Citation omitted.) *Lackey v. State*, 246 Ga. 331, 334-335 (5) (271 SE2d 478) (1980). The trial court has the discretion to make exceptions to the rule, a violation of which affects the witness's credibility, and only abuse will warrant reversal. *Meadows v. Barker*, 241 Ga. App. 753, 755 (3) (526 SE2d 643) (1999). In this case, the juvenile

court allowed the witnesses to remain because they were all agents of the department. A review of the record reveals that none of the three department witnesses testified about the same events; therefore, no inconsistencies could have caused them to shape their testimony to support or dispute the other witnesses' testimony. We find no abuse of discretion.

In any event, the appellant's response regarding the foster parents implied acquiescence to the court's allowing the DFCS witnesses to remain, which waived the issue. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further. [Cits.]" *Whisnant v. State*, 178 Ga. App. 742, 744 (2) (344 SE2d 536) (1986).

2. J. B.'s mother asserts that the trial court erred in forcing her to proceed with her case before the department's final witness testified. When the hearing began, the department notified the judge that the pediatrician who was under subpoena for that day was out of town, and therefore her testimony would have to be presented at a later date. The mother noted that one of her witnesses was also unavailable, and the judge replied that she would address the missing witnesses issue at the end of the day.

The department's three available witnesses testified, and the judge directed the mother to begin presenting her evidence. The mother objected to having to introduce evidence without hearing the entire case against her, asserting that having to testify twice, once then and once after the doctor testified, violated her due process rights. The court responded that the mother had sufficient notice about the doctor's anticipated testimony from the department's opening statement, and directed her to begin. On appeal the mother argues that forcing her to present her defense before the department rested violated both her right to due process and her right to equal protection under the Georgia Constitution. She further contends that this change in the order of proof shifted the burden of proof from the State to her.

When the trial reconvened and the doctor testified, the mother had an opportunity to testify again, but did not do so. Instead, she called as a witness a motel proprietor who confirmed that the mother reported that J. B. was hit on the head by a falling headboard when she checked out of the motel. She also called a witness who testified that she had never seen the mother hit J. B., and that the two had a good relationship.

The appellant failed to raise and obtain a ruling on her equal protection challenge in the trial court, and therefore she presents

nothing to review in this court. *In the Interest of F. C.*, 248 Ga. App. 675, 680 (4) (549 SE2d 125) (2001).

As to her claim of a due process violation, the trial court has broad discretion with respect to the order of proof. *Bruce v. State*, 263 Ga. 273, 274 (4) (430 SE2d 745) (1993). The mother has failed to specify how her evidence would have been different had she been able to present her evidence after the pediatrician testified, and therefore has shown no harm. We find no error.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED APRIL 10, 2003.

*Jerry F. Pittman*, for appellant.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Stephanie B. Hope, Andrea R. Moldovan,* for appellee.

