A06A0678, A06A0679. IN THE INTEREST OF C. P. et al., children.
(630 SE2d 165)

ANDREWS, Presiding Judge.

Both the mother and the father of C. P., H. P. and N. P. appeal from the juvenile court's order terminating their parental rights on the grounds that the evidence was insufficient and that termination was not in the children's best interests. We find no error and affirm in both cases.

A juvenile court's termination of parental rights is a two-step process:

> The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.

(Footnotes omitted.) *In the Interest of T. F.*, 250 Ga. App. 96, 98 (1) (550 SE2d 473) (2001); see also OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv). "On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." (Footnote omitted.) *In the Interest of F. C.*, 248 Ga. App. 675 (549 SE2d 125) (2001).

1. *Parental Misconduct or Inability.* Construing the evidence in the light most favorable to the juvenile court's findings, we address each of the relevant factors in turn as to each parent.

(a) *Deprivation.* In September 2003, soon after two of the three children were found playing unattended near a major intersection, the juvenile court found that the children were deprived as a result of neglect, including inadequate supervision, unstable housing, and physical and medical neglect. As a result, the children remained in the legal custody of the Georgia Department of Human Resources (the "Department"). Additional hearings were held in July and November 2004 and in March 2005, with each culminating in a finding that the deprivation had continued. Since neither parent appealed any of these deprivation orders, each parent is bound by their

findings of fact for purposes of the termination hearing. See *In the Interest of R. G.*, 249 Ga. App. 91, 93 (1) (a) (547 SE2d 729) (2001).

(b) *Lack of Parental Care or Control.* Between the first September 2003 deprivation finding and the October 2005 termination hearing, each parent failed to achieve many of the goals set out in their reunification plan.

Specifically, the evidence presented at the termination hearing showed that both parents had moved more than ten times since the children were placed in the Department's custody, had failed to keep the Department apprised of their location, and had failed to contribute to the children's support. Both parents failed to attend several drug screens and to complete drug treatment classes, and each tested positive for marijuana three times. Neither parent knew their new address at the time of the termination hearing. The mother was not able to hold a job. Having been convicted of driving under the influence two years before, the father had failed to regain his driver's license, with the result that the couple missed several juvenile court hearings. The father had left the responsibility for communicating with the Department's case manager to the mother, and admitted to using marijuana two weeks before the termination hearing.

Based on this evidence, a rational trier of fact could have found clear and convincing evidence that both parents' lack of proper parental care or control caused these children to be deprived. See OCGA § 15-11-94 (b) (4) (C) (i)-(iii).

(c) *Lack of Care or Control Likely to Continue.* Evidence of past conduct may be considered in determining whether the deprivation is likely to continue if the children are returned to the parents. See *In the Interest of A. A.*, 252 Ga. App. 167, 172 (2) (c) (555 SE2d 827) (2001). Although there was evidence that the parents bonded with the children at their visitation sessions, such evidence is not conclusive of parental fitness in light of their failures to stop abusing drugs, to achieve stable housing, to support their children, and to maintain contact with them. There was sufficient evidence here to authorize the juvenile court's finding that the lack of proper parental care or control was likely to continue. See *In the Interest of R. W.*, 248 Ga. App. 522, 525-526 (2) (546 SE2d 882) (2001) (juvenile court was authorized to consider mother's failure to support children even though child support payments had never been ordered); *In the Interest of A. T. H.*, 248 Ga. App. 570, 573 (1) (547 SE2d 299) (2001) (the question whether a parent's conduct warrants hope of rehabilitation is a matter for the juvenile court).

(d) *Serious Harm to the Child.* The juvenile court determined that the longstanding deprivation of these children was likely to continue, and was entitled to infer from that evidence that the deprivation would cause serious harm to the children if they were

returned to either parent. *In the Interest of A. T. H.*, supra; *In the Interest of B. C.*, 250 Ga. App. 152, 156 (2) (550 SE2d 707) (2001).

On the record before us, then, we conclude that the juvenile court could have found clear and convincing evidence of parental misconduct or inability on the part of both parents. See OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

2. When clear and convincing evidence of parental misconduct or inability exists, the juvenile court then considers whether termination of parental rights is in the best interest of the child, in light of the physical, mental, emotional, and moral condition and needs of the child, including the need for a secure and stable home. OCGA § 15-11-94 (a).

The same evidence showing parental misconduct or inability may, and here does, establish that the children's best interests required the termination of the parents' rights. See *In the Interest of J. B. A.*, 230 Ga. App. 181, 185 (2) (495 SE2d 636) (1998). Specifically, one child was visibly upset as a result of the parents' failure to maintain contact with them, as when the parents failed to appear for a specially scheduled Mother's Day 2005 visit after not seeing their children for five months. The evidence also showed that since they had been placed in the custody of the Department, the children had adjusted well to their foster family, who wished to adopt them. Thus there was no abuse of discretion when the juvenile court found that the children's best interests would be served by terminating the parents' rights in them. See *In the Interest of Z. B.*, 252 Ga. App. 335, 339 (2) (556 SE2d 234) (2001).

Since a rational trier of fact could have found clear and convincing evidence of the mother's misconduct or inability, and that termination of parental rights was in the best interests of the children, the juvenile court did not err in terminating the mother's rights as to those children.

*Judgment affirmed in both cases. Barnes and Bernes, JJ., concur.*

DECIDED APRIL 18, 2006.

*Hasty, Pope & Ball, Patricia B. Ball*, for appellant (case no. A06A0678).

*Bray & Johnson, Jonathan A. Kesler*, for appellant (case no. A06A0679).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Hope M. Pereira, for appellee.*