A06A0944. IN THE INTEREST OF L. L., a child.

(635 SE2d 216)

ANDREWS, Presiding Judge.

The mother of L. L., a 19-month-old baby girl,[1] appeals from the juvenile court's order terminating her parental rights. The mother contends that (1) there was no clear and convincing evidence to support the juvenile court's termination of her parental rights; and (2) the juvenile court erred by failing to make a thorough search for relatives to whom the juvenile court could award custody of her child. For the reasons set forth below, we affirm.

1. A juvenile court's termination of parental rights is a two-step process: The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home. OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv). "On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost." *In the Interest of F. C.*, 248 Ga. App. 675 (549 SE2d 125) (2001).

So viewed, the evidence shows that the Washington County Department of Family and Children Services (DFACS) removed L. L. from her mother's custody on the day she was born, December 14,

---

[1] L. L. was ten months old at the time the juvenile court terminated the mother's parental rights.

2004, because both L. L. and her mother tested positive for methamphetamine and benzodiazepine (Xanax) and because the mother's parental rights to two other young children had already been terminated based, in part, on her failure to address her drug addiction. The mother received no prenatal care during her pregnancy, and the mother admitted during the termination hearing that she knew she should not take methamphetamine while pregnant "[b]ecause it makes you not eat."

The mother visited with the child twice in January before being arrested and incarcerated in February. The mother did not inform DFACS of her change in circumstances and was surprised when a DFACS social worker visited with her in jail on March 22, 2005, to explain her case plan. DFACS created a case plan for reunification concurrent with one for termination and adoption. The case plan for reunification required the mother to obtain a substance abuse assessment, to follow recommendations made following the assessment, to attend and successfully complete a drug treatment program, to remain drug and alcohol free for six consecutive months, to clear all pending legal charges by July 17, 2005, and to attend parenting classes.

The mother testified that she understood her obligations under the case plan, acknowledged that she had not fulfilled those obligations, and asked for an additional three to six months to complete her case plan. The record shows that the case plans for her other two children contained similar goals and that the mother was not able to fulfill her obligations under those case plans when she was provided with more time than in the instant case. The mother admitted that she used methamphetamine two weeks before the termination hearing and that she had used drugs on and off for ten years, but also testified that she did not think she had a drug problem. Because of her incarceration on pending criminal charges, the mother visited with L. L. three times total after her birth. When the court asked her opinion on what should happen with her child, the mother replied, "I think the best interest, I think she ought to stay right now where she's staying at. Yes, sir, until I can prove better."

The juvenile court terminated the mother's parental rights based on the mother's failure to confront her drug addiction and her failure to complete her case plan. The trial court rejected the mother's plea for additional time to complete her case plan, because "the evidence presented . . . indicates that there is little likelihood that an extra six months or even two years will make a difference in the actions of the mother."

We agree with the juvenile court's finding that the mother's parental rights should be terminated. The State presented clear and

convincing evidence of the four factors demonstrating parental misconduct and inability. The mother has never disputed that L. L. was a deprived child and is bound by the unappealed order finding that L. L. was deprived. *In the Interest of B. S.*, 265 Ga. App. 795, 797 (595 SE2d 607) (2004). The mother's drug use during her pregnancy caused the deprivation and the mother's continued use of methamphetamine after L. L. was removed from her custody, as well as her failure to beat her addiction when required to do so by two other case plans, demonstrate that the cause of L. L.'s deprivation is likely to continue. "The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." *In the Interest of A. G.*, 253 Ga. App. 88, 90-91 (558 SE2d 62) (2001). Finally, the evidence showed that continued deprivation in the form of the mother's addiction to methamphetamine would cause serious harm to L. L.

We further find that clear and convincing evidence supported the trial court's conclusion that the termination of the mother's parental rights was in L. L.'s best interest. The same evidence showing parental misconduct or inability may, and here does, demonstrate that the child's best interest required the termination of the mother's rights. *In the Interest of C. P.*, 279 Ga. App. 25, 27 (2) (630 SE2d 165) (2006).

Because a rational trier of fact could have found clear and convincing evidence of the mother's misconduct or inability and that termination of her parental rights was in the best interest of L. L., we find no error in the juvenile court's termination of her rights.

2. In her remaining enumeration of error, the mother contends the juvenile court "committed reversible error in finding that the Department of Family and Children's Services had made a thorough search under OCGA § 15-11-103 (a) (1)." We find no merit in this enumeration because it fails to take into account that in 2003, the General Assembly deleted the requirement that "[a] thorough search for a suitable family member shall be made by the court and the Department of Human Resources," in connection with a juvenile court's obligation to first attempt to place a child with relatives. See Ga. L. 2003, p. 503, § 1. The current Code section regarding placement with relatives after a parent's rights are terminated provides:

If, upon the entering of an order terminating the parental rights of a parent, there is no parent having parental rights, the court shall first attempt to place the child with a person related to the child by blood or marriage or with a member of the child's extended family if such a person is willing and, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified

to receive and care for the child, if the court determines such placement is the most appropriate for and in the best interest of the child. A placement effected under this paragraph shall be conditioned upon the family member who is given permanent custody or who is granted an adoption of the child agreeing to abide by the terms and conditions of the order of the court.

OCGA § 15-11-103 (a) (1). To the extent the mother might be asserting that the trial court failed to comply with its obligation to make an attempt to place her child with relatives as outlined above, we also find no error on the part of the juvenile court.

"We review for abuse of discretion a juvenile court's determination that placement with a relative is not in the best interest of the child." (Citation and footnote omitted.) *In the Interest of S. S.*, 267 Ga. App. 601, 603 (600 SE2d 679) (2004). The record shows that the juvenile court repeatedly questioned the mother about any suitable relatives and discovered none. The mother pointed to her child's grandparents as possible placement options, but the record shows that her parents were divorced, that she had been removed from her parents and placed in foster care at the age of 13, that her mother is disabled, and that her father is deceased. When the mother pointed to her child's paternal grandparents, she acknowledged that the grandfather was over 90 years old and that he was too old to take care of a baby. The record also contains no evidence that any of the relatives identified by the mother were willing to care for her child. After making a diligent inquiry of the mother about relatives with whom her child could be placed, the trial court concluded that there were none "who may take permanent custody of the child at this time." As the record contains some evidence showing that the trial court attempted to place the child with a relative, the juvenile court satisfied the requirements of OCGA § 15-11-103 (a) (1). See *In the Interest of A. H.*, 278 Ga. App. 192, 197 (4) (628 SE2d 626) (2006).

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED JULY 28, 2006.

*H. Brannen Bargeron*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Thomas J. O'Donnell*, for appellee.