A96A0010. IN THE INTEREST OF M. N. L., a child.
(470 SE2d 753)

POPE, Presiding Judge.

The mother of M. N. L. appeals from an order of the juvenile court terminating her parental rights.[1] The two-part question presented is whether (1) there is clear and convincing evidence of parental misconduct or inability, and (2) termination of parental rights is in the best interest of the child. See *In the Interest of G. L. H.*, 209 Ga. App. 146, 149 (2) (433 SE2d 357) (1993). Concluding that the evidence supports the juvenile court's affirmative answer to both parts of the question, we affirm its decision to terminate the mother's parental rights.

Viewed in a light to support the juvenile court's determination, see *G. L. H.*, 209 Ga. App. at 149 (1), the evidence shows that M. N. L. was born prematurely in July 1993. M. N. L.'s mother, who was 27 years old when he was born, used alcohol and drugs throughout her pregnancy and tested positive for cocaine when she was admitted to the hospital to give birth. Concerned about the results of the drug test and other behavioral indicators of drug and alcohol abuse, the hospital recommended that the mother spend a couple of days with M. N. L. in the "parenting room" at the hospital, where she could learn to take care of her baby, first with the help of nurses and then on her own. The second night the mother was to spend the entire night with the baby on her own, but instead she left the baby and went off with her boyfriend.

At that point the Department of Family & Children Services ("DFCS") obtained an adjudication that M. N. L. was deprived and took temporary custody of him, with the hope of eventually reuniting the child with his mother. DFCS and the mother agreed to a multi-goal reunification plan, the first step of which was to complete an in-patient treatment program at the Alcohol & Drug Abuse Treatment Center ("ADAC"). When the mother was arrested and posted bail with the "Aid to Families With Dependent Children" funds that she

---

[1] The father's parental rights were also terminated, but he does not appeal.

originally intended to use for the ADAC program, DFCS paid for the ADAC program for her. Nonetheless, the mother left before the program was over, and ADAC refused DFCS's request to take her back, saying she was uncooperative and uncommitted. DFCS's efforts to get the mother into out-patient treatment were also unsuccessful, as the mother failed to even show up for an initial interview. To the mother's credit, she was visiting M. N. L. as regularly as possible through the end of 1993, and sent him cards and presents. In January 1994, however, the mother was again arrested, and she has been incarcerated since that time.

The mother's criminal history goes back to her arrest and conviction for burglary when she was 18. Prior to M. N. L.'s birth, she was also convicted of criminal trespass, theft by taking of a truck, and theft by taking of a purse. Then, within a month after M. N. L.'s birth, the mother was arrested for stabbing a male friend. Out on bail, she stabbed another man in January 1994. She was convicted of both aggravated assaults and sentenced to ten years in prison. At first the mother testified that she had no parole date, but she later testified that she might come up for parole after 52 months. Thus, the mother will be incarcerated at least until the latter part of 1998, and possibly a lot longer.

At the time of the hearing on the motion to terminate her parental rights, the mother had been in prison on the latest charges for approximately ten months. She testified that she had been alcohol and drug free during that time, and that for the last six months she had participated in various therapy groups for substance abuse. The mother has no family who can care for the child, but she testified she knew of an agency that takes care of children of inmates and allows them to maintain contact with their incarcerated mothers.

1. The juvenile court's finding of parental misconduct or inability is supported by clear and convincing evidence that the child is deprived and the deprivation is likely to continue. See OCGA § 15-11-81 (b) (4) (A). Although it appears the mother cares for her child, she is unable to take care of him due to her substance abuse as well as her long-term incarceration for her criminal activities. See OCGA § 15-11-81 (b) (4) (B) (ii & iii). The mother's efforts to improve herself during her imprisonment are good. However, "[t]he trial court must determine whether a parent's conduct warrants hope of rehabilitation, not an appellate court. [Cit.]" *In the Interest of J. R.*, 201 Ga. App. 199 (1), 200 (410 SE2d 458) (1991). In light of the mother's lengthy history of alcohol and drug abuse and her repetitive incarcerations, her testimony regarding her recent progress does not negate the clear and convincing evidence supporting the juvenile court's finding that the child's deprivation is likely to continue. Id.; see also *In the Interest of M. R.*, 213 Ga. App. 460, 467 (4) (444 SE2d 866)

(1994); *In the Interest of J. M. C.*, 201 Ga. App. 173 (410 SE2d 368) (1991).

2. Nor did the court err in concluding that termination would serve the best interests of M. N. L. The child has been in foster care since soon after his birth, so no bond between the mother and child has formed. The mother will be in prison for at least two and a half more years (possibly as long as eight more years), and the child would have to be in the care of a foster family or agency until that time if he cannot be adopted. DFCS representatives testified at the hearing that M. N. L.'s prospects for adoption were good at that time — but the older the child gets, the poorer his prospects for adoption become. See *In the Matter of M. R.*, 213 Ga. App. at 464-465 (1) (b).

3. The mother also enumerates as error the juvenile court's refusal to reconsider its decision in light of "new evidence" that an agency called Tender Mercy Ministries could care for M. N. L. and allow him to visit her. First of all, this is not really new evidence since the mother described such an agency (though without mentioning the name) in her testimony at the termination hearing. Secondly, the existence of such a possibility simply does not outweigh the factors discussed in Division 2 which clearly establish that termination is in the best interest of the child. DFCS is obligated to pursue alternatives to termination, which it did in this case, but it is not obligated to gamble the child's prospects for a good life on the possibility that the mother will emerge from prison in two and a half to eight years reformed to the point that she can take care of M. N. L. and provide him with a stable home.

*Judgment affirmed. Andrews and Smith, JJ., concur.*

DECIDED APRIL 8, 1996.

*Jerry W. Moncus*, for appellant.

*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie M. Baldauff, Assistant Attorneys General, David T. Blackburn*, for appellee.