A01A0679. IN THE INTEREST OF J. B., a child.
(545 SE2d 609)

ELDRIDGE, Judge.

Both parents appeal the trial court's October 2000 order terminating their parental rights to J. B. For the reasons discussed below, we affirm.

The standard of review of a juvenile court's decision to terminate parental rights is whether, after reviewing the evidence in the light most favorable to the appellees, any rational trier of fact could have found by clear and convincing evidence that the parents' right to custody of the children has been lost. *In the Interest of E. C.,* 225 Ga. App. 12, 13 (482 SE2d 522) (1997). "This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met." *In the Interest of R. N.,* 224 Ga. App. 202 (480 SE2d 243) (1997); *In the Interest of B. P.,* 207 Ga. App. 242, 244 (427 SE2d 593) (1993).

Viewed in this light, the evidence showed that J. B. was born in November 1992 and that the child is currently in foster home care and is subject to the continuing supervision of the Fulton County Department of Family & Children Services ("DFCS") pursuant to court order. In October 1998, the court removed J. B., along with her sister R. B., from her parents' custody. On March 15, 1999, the court determined that J. B. and R. B. were deprived based on the following: (1) R. B.'s allegation of the father's sexual abuse; (2) criminal charges pending against the father; (3) the mother's repeated denial of any such sexual abuse; (4) the need for intensive counseling for both parents; (5) the inability of the children's temporary legal guardian and brother to provide a home, care, or support for the children; (6) the brother's request that the DFCS remove the children from his home; and (7) the fact that reasonable efforts had been made to prevent the children from entering DFCS custody. The parents stipulated to this petition alleging deprivation.

Shortly after March 15, 1999, a case plan was instituted and given to the parents to reunite them with J. B. and R. B. This case plan enumerated four goals: (1) that the father attend a sexual offender treatment program; (2) that both parents continue with

individual and family counseling; (3) that both parents visit their children; and (4) that both parents pay child support. The goals were to be reassessed every six months based on the parents' progress. In April 2000, the DFCS added the additional requirement that the father continue treatment in the sexual offender program and follow its recommendations.

On October 28, 1999, the trial court extended DFCS' temporary legal custody for 12 months based on the court's finding that J. B. continued to be a deprived child. The trial court found that J. B.'s parents had not ameliorated the previous conditions of deprivation and were failing to achieve all of the goals in the case plan. Specifically, the court determined that the father failed to complete appropriate counseling geared toward the alleged sexual abuse which related directly to the original removal of the children. Moreover, the criminal sexual abuse charges against the father were still pending. Further, the mother continued to deny any sexual abuse and chose to remain in the same residence with the father despite the allegations of sexual abuse. As such, the court reasoned at that time, there was risk of further abuse if J. B. were to be returned even to the mother's custody.

On May 24, 2000, the Georgia Department of Human Resources, acting through the DFCS, filed a petition for termination of parental rights. The petition emphasized the aforementioned reasons and added that neither parent had contributed to the support or maintenance of the child and that the father had failed to attend and successfully complete a sexual offender treatment program as required by the instituted case plan. Finally, the DFCS argued that the mother failed to protect J. B.'s sibling from acts of sexual abuse, exposing J. B. to risk which substantiated a lack of proper parental care or control.

On September 12, 2000, the petition for termination was heard and concluded only as to J. B., in that R. B. was no longer a minor. The trial court heard evidence from a DFCS agent who was the case manager of J. B. and three therapists, one of whom was the Director of the Highland Institute for Behavioral Change. These witnesses had personal knowledge of the reunification plan ordered by the court and the parents' failure to comply with the same. The most recent case plan and case review were tendered to the court without objection as evidence. JoAnn Dixon, the DFCS caseworker, testified that to her knowledge, no child support had been paid. She further stated that the father's sexual offender treatment program was ongoing and had not been completed. Moreover, Dixon testified that the mother still maintains that no sexual abuse occurred. Lastly, Dixon testified as to returning J. B. to her parents that: "the agency feels that at this time, . . . we're unable to determine if what has hap-

pened previously with the other children and with the older sibling, who made the allegations, that this same type of behavior will not occur to her." The Highland Institute Director testified that the father "showed all the characteristics that would give . . . concern that he was, in fact, a sexual offender." She also testified that the father had made no progress through counseling and that J. B. would be at risk of sexual abuse if returned to the parents' custody. Dr. Roys, the father's therapist, testified that the father had made no progress over two months of treatment. On October 16, 2000, the court entered a termination order finding parental misconduct or inability within the meaning of OCGA § 15-11-94 (b) (4) in that the child is a "deprived child" as the term is defined in OCGA § 15-11-2. The order enumerated specific factual findings and conclusions of law in compliance with OCGA § 15-11-94. The parents appeal this termination order. *Held*:

In two enumerations of error, the parents challenge the sufficiency of the evidence, asserting that: (1) the evidence failed to demonstrate the parents' present parental misconduct or inability or that any prior deprivation is likely to continue into the future and is unlikely to be remedied; and (2) termination was incorrect because the parents were not given the opportunity to comply with the reunification plan before termination proceedings were initiated. We disagree.

> In considering the termination of parental rights, the court shall first determine whether there is present clear and convincing evidence of parental misconduct or inability as provided in subsection (b) of this Code section. If there is clear and convincing evidence of such parental misconduct or inability, the court shall then consider whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home.

OCGA § 15-11-94 (a).

The first factor in the determination of parental misconduct or inability is consideration of whether the children are deprived. OCGA § 15-11-94 (b) (4) (A) (i); see also OCGA § 15-11-2 (8) (A). In the instant case, J. B. and her sister were determined to be deprived in March 1999 and were removed from the parents' care. For a second time, in October 1999, J. B. was determined deprived, and an extension of custody was granted to DFCS. The parents did not challenge either determination, and, therefore, the parents are bound by that finding. *In the Interest of M. L. P.*, 236 Ga. App. 504 (512 SE2d

652) (1999); *In the Interest of E. C.*, supra at 15; *In the Interest of T. B. R.*, 224 Ga. App. 470, 473 (1) (a) (480 SE2d 901) (1997); *In the Interest of B. P.*, supra.

In addressing the second factor, the trial court must consider whether there has been a lack of proper parental care or control which caused the deprivation. OCGA § 15-11-94 (b) (4) (A) (ii). It is well established that lack of proper care may be established by showing "past physical, mental, or emotional neglect of the child or of another child by the parent." *In the Interest of M. L. P.*, supra; OCGA § 15-11-94 (b) (4) (B) (v).

> [W]here the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: (i) To develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) To provide for the care and support of the child as required by law or judicial decree; and (iii) To comply with a court ordered plan designed to reunite the child with the parent or parents.

OCGA § 15-11-94 (b) (4) (C).

In this case, J. B. and her sister were removed from the home due to allegations of sexual abuse (appellant-father had spoken to and touched sister R. B. in an inappropriate sexual manner) in October 1998. Subsequently, the parents lost custody by order of court; this order was extended for 12 additional months because the original conditions of deprivation had not been eliminated. Since that time, the parents have not regained custody of J. B. No verifiable proof of the parents' payments of child support were proffered to the lower court, only unsubstantiated testimony of the mother. Moreover, no proof was tendered to show that the parents had completed parenting sessions as required by the case plan. Further, the father's enrollment in a sexual offender treatment program did not take place until the juvenile court judge threatened the father with a 20-day jail sentence. The father continues to be faced with pending criminal charges; yet, the mother remains in denial of any charges and at the residence of the father.

The parents seem to argue that their past conduct was the sole reason for the lower court's order for termination and, therefore, irrelevant to the question of their alleged "present" fitness as parents. We strongly disagree. A history of alleged sexual abuse taken

together with a current denial of any alleged abuse, failure to complete a sexual offender treatment program, failure to pay child support, and failure to complete the goals set forth by the State clearly establish present conduct from which a factfinder can infer that the parents are not equipped to support J. B. in the future. *In the Interest of T. B. R.*, supra.

The parents further argue that the father had not been discharged or released from his sexual offender treatment program at the time of the termination hearing and, therefore, termination was improper or, at least, premature. For this contention, the parents rely on Dr. Roys' testimony that the father's improvement might be "possible," even though no evidence of improvement had been shown up to that point. Further, Mindy White, the father's individual therapist, testified at the time of the hearing that the father was still very defensive, in denial, and trying to rationalize his behavior. It is well established that "[t]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Citation and punctuation omitted.) *In the Interest of M. L. P.*, supra at 509; *In the Interest of R. N.*, supra at 205 (2). For this Court to construe Dr. Roys' testimony as more than a mere "positive promise" transcends the bounds of credibility, and this Court's standard of review; ample evidence exists in the record of negative past and present fact. *In the Interest of R. N.*, supra at 202; *In the Interest of M. N. L.*, 221 Ga. App. 123, 124 (470 SE2d 753) (1996) (trial court, not an appellate court, must determine whether a parent's conduct warrants hope of rehabilitation).

Once the determination has been made that a lack of parental control has caused the child to be deprived, the trial court must consider: "whether termination of parental rights is in the best interest of the child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." OCGA § 15-11-94 (a); *In the Interest of M. L. P.*, supra at 510.

In making such determination:

those same factors which show the existence of parental misconduct or inability can also support a finding that the termination of parental rights of the defaulting parent would be in the child's best interest. Thus, a finding as to whether the termination of parental rights is in the best interest of the child represents, in essence, a finding as to whether the specifics of the parental default that have otherwise been found to exist are of such magnitude as to war-

rant the conclusion that the child . . . would be better served by the grant of the petition to terminate.

(Citations, punctuation and emphasis omitted.) *In the Interest of B. P.*, supra at 245; *In the Interest of D. W.*, 235 Ga. App. 281, 283 (509 SE2d 345) (1998); see also *In the Interest of R. N.*, supra at 205.

The termination of parental rights is a severe measure. However, a termination hearing seeks above all else the welfare of the child. In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse.

(Citations and punctuation omitted.) *In the Interest of A. A. G.*, 146 Ga. App. 534, 535 (246 SE2d 739) (1978); see also *Powell v. Dept. of Human Resources*, 147 Ga. App. 251 (248 SE2d 533) (1978). The evidence of record overwhelmingly supports the trial court's proper finding that the parents' past and present conduct establishes grounds for termination. Even though past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. *In the Interest of R. N.*, supra at 204; *In the Interest of A. M. B.*, 219 Ga. App. 133, 134 (464 SE2d 253) (1995). The trial court was entitled to infer from the evidence that the same pattern of deprivation would continue if J. B. was reunited with her parents.

Despite the fact that the parents have made an attempt to comply with the reunification plan, " 'the trial court must determine whether a parent's conduct warrants hope of rehabilitation,·not an appellate court.' " (Citations omitted.) *In the Interest of M. L. P.*, supra at 509; *In the Interest of M. N. L.*, supra; *In the Interest of T. B. R.*, supra at 475 (efforts to comply with reunification plan fell "very short of negating years of . . . harmful neglect"). The evidence presented supports a finding by the trial court that it is very likely that the deprivation of J. B. will continue and that J. B. will be harmed thereby.

Upon review of the trial court's order and the entire record, this Court finds that the trial court did not abuse its discretion in terminating the parents' rights to J. B. As such, the trial court correctly determined that there was sufficient clear and convincing evidence to support termination. There was no error.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 14, 2001.

*Dawn D. Ballard, Thomas J. Thomas*, for appellants.

*Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen S. Nelson, Laura W. Hyman, Assistant Attorneys General, Hall & Rapoport, Robert E. Hall,* for appellee.