**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 14, 2023**

# In the Court of Appeals of Georgia

A22A1225. ANDERSON v. CRIBBS.

HODGES, Judge.

Alanna Anderson, the mother of a minor daughter she shares with Chad Cribbs, appeals an order of the Superior Court of Cobb County granting Cribbs' pro se petition for legitimation, arguing that the trial court erred in: (1) failing to require Cribbs to submit to a drug test based upon his known history of substance abuse; (2) entering a parenting plan that is not in the child's best interest; and (3) failing to award Anderson current or retroactive child support. Finding no error, we affirm.[1]

---

[1] Although not required by our rules, see Court of Appeals Rule 23 (b) ("Appellees are encouraged but, other than the State in a criminal case, are not required to file a brief."), we note that Cribbs did not file an appellee's brief in this case.

"When reviewing a superior court's custody ruling, we view the evidence in the light most favorable to the trial court's decision." (Citation and punctuation omitted.) *Smith v. Pearce*, 334 Ga. App. 84 (778 SE2d 248) (2015).[2] So viewed, the record demonstrates that Anderson and Cribbs are the parents of a child born out of wedlock on November 28, 2012. Cribbs filed a pro se petition to legitimate the child on August 6, 2018.[3] In November 2019, the trial court entered a temporary order granting Cribbs' petition for legitimation, awarding joint custody of the child to Anderson and Cribbs, and awarding primary physical custody to Anderson. The trial court also awarded Cribbs visitation on every other weekend, but "[o]nce [he] present[ed] the Court a drug screen indicating he is negative for THC, he shall have

---

[2] See also *Mathenia v. Brumbelow*, 308 Ga. 714, 715 (1) (843 SE2d 582) (2020) ("An appellate court reviews a trial court's decision on a legitimation petition for abuse of discretion only. Moreover, factual findings made after a hearing shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them.") (citation and punctuation omitted).

[3] Initially, the trial court entered an order granting Cribbs' pro se petition on October 30, 2018. However, Anderson moved to set aside the order because Cribbs failed to serve her with a summons. Cribbs, who by then was represented by counsel, consented to Anderson's motion and the trial court granted Anderson's motion, after which Anderson filed a response to Cribbs' petition and the case proceeded in the ordinary course.

parenting time" every weekend. The trial court declined to order child support at that time.[4]

During the final hearing, Anderson requested at least one weekend of visitation per month (in view of Cribbs' visitation each weekend)[5] and a specific visitation schedule over the summer. Anderson also "ask[ed] . . . that [Cribbs] take a drug test" and that the trial court award child support, retroactive child support, and attorney fees. Testimony during the hearing suggested that the child resided with Cribbs in 2018 and attended an elementary school in Cribbs' district because that school was better than the school in Anderson's district. Cribbs testified that he "paid for everything that happens" when he had the child. For her part, Anderson testified that

---

[4] During the final hearing, the trial court stated that when it does not order child support, "I tend to say, y'all need to take care of your own expenses." No transcript of the temporary hearing was specifically requested by Anderson in her notice of appeal or is included in the record. See generally *Moore v. Childs*, 347 Ga. App. 560, 562-563 (3) (820 SE2d 186) (2018) (affirming trial court judgment where appellant "did not specify in her notice of appeal whether or not a transcript of that proceeding was to be transmitted by the trial court as part of the record on appeal, . . . and the record transmitted by the trial court did not include a transcript").

[5] Cribbs' visitation, following his completion of "negative" drug screens, was the subject of a motion for contempt following Anderson's initial refusal to comply with the trial court's temporary order. However, the record does not appear to contain an order adjudicating Cribbs' motion, and there do not appear to be additional allegations of contempt thereafter.

3

Cribbs did not contribute to the child's activities, clothing needs, insurance, tutoring, or similar expenses. Following the trial court's November 2019 temporary order, the child resided with Anderson.

Cribbs works as a building custodian for the Fulton County School District and lives with his wife and two children in Marietta near Smyrna. Anderson works an overnight shift as a police dispatcher for the City of Atlanta and has a babysitter for the child during the nights that she is at work. Anderson resides in Smyrna, and the child now attends King Springs Elementary School in Smyrna, located in Anderson's district. The child independently boards a school bus in the mornings within view of Anderson's residence. Anderson intended to continue the child's enrollment at King Springs, and Cribbs indicated that if he were granted primary physical custody, Cribbs' wife would take the child to school due to his work schedule.

At the conclusion of the hearing, the trial court noted that "this is not a crisis case" and observed that "both of you love your daughter. And I don't think either one of you is bad. So I just need you guys to learn to communicate with each other and learn to coparent a little bit better." The trial court also identified Cribbs and Anderson as good candidates for "coparenting without anger." Thereafter, the trial court entered a final order of legitimation which, relevant to this appeal, incorporated

a final parenting plan that awarded joint legal and physical custody to Anderson and Cribbs and established a "2-2-5-5"[6] parenting schedule. The trial court also determined that Anderson was not entitled to child support payments and declined to award retroactive child support because "both parents have covered the expenses of the child while in their custody." This appeal followed.

1. In her first enumeration, Anderson contends that the trial court failed to consider Cribbs' history of positive drug screens and failed to require him to submit to a drug screen at the final legitimation hearing. We find no abuse of discretion.

In determining to whom custody of a child should be awarded, "[t]he duty of the judge in all such cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly." OCGA § 19-9-3 (a) (2). Judges may consider any relevant factor in evaluating the best interests of the

---

[6] Although Anderson has not cited, nor have we found, any references to a "2-2-5-5" parenting schedule in a published decision in Georgia, it is commonly cited in cases from other jurisdictions and refers to "a parenting schedule whereby the minor child would be with mother for two days, father for two days, mother for five days, and father for five days. Such a parenting schedule results in approximately *equal parenting time*." (Emphasis supplied.) *Jacob A. v. C. H.*, 127 Cal. Rptr. 3d 611, 614, n. 1 (Cal. Ct. App. 2011). The plan also results in each parent having visitation on alternating weekends. See *Kpetigo v. Kpetigo*, 192 A3d 929, 933 (I), n. 2 (Md. Ct. Spec. App. 2018).

child "including, but not limited to: . . . [a]ny evidence of substance abuse by either parent." OCGA § 19-9-3 (a) (3) (Q).

> When considering a dispute regarding the custody of a child, a trial court has very broad discretion, looking always to the best interest of the child. This Court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, we will not find there was an abuse of discretion.

(Citation omitted.) *Bridger v. Franze*, 348 Ga. App. 227 (820 SE2d 223) (2018).

During the final hearing, Anderson's counsel "ask[ed]" that Cribbs take a drug test in view of his history of drug use. When the trial court asked Cribbs if he still smoked marijuana, he replied he did not and agreed to take a drug test. The trial court indicated that it was "not ordering [Cribbs] to take [a drug test]" but simply "giving [Cribbs] an option to take it." On cross-examination, Cribbs again denied smoking marijuana and agreed to take a drug test. Anderson also remarked that it "would be nice" if Cribbs took a drug test. The record demonstrates that, prior to the trial court's November 20, 2019 temporary hearing, Cribbs had two "positive" drug screens for THC on November 6 and November 19.[7] After the temporary hearing, however, the

---

[7] The record also demonstrates that Cribbs missed two drug screens prior to the temporary hearing.

record shows four "negative" drug screens on December 6, December 16, January 14, 2020, and January 27, 2020.[8] The trial court did not require Cribbs to submit to a drug screen in its final order.

We find no abuse of discretion. At the outset, the final hearing transcript indicates that the trial court considered Cribbs' prior drug use in determining the child's best interest, questioning Cribbs on any recent drug use. See OCGA § 19-9-3 (a) (3) (Q). Cribbs' testimony, as well as his consistent "negative" drug screen results following the temporary hearing, did not suggest any ongoing substance abuse or a need for additional drug screens, nor did Anderson allege that Cribbs' substance

---

[8] In her briefing in this Court, Anderson has openly misrepresented the record on this point. Anderson argued that Cribbs: (1) "was unable to produce a negative drug screen" after the November 2019 temporary hearing; (2) "had a total of 8 positive drug screens[;]" and (3) "could not pass a drug test for 3 months during the Temporary Hearing." There is no evidence in the record to support these assertions. In fact, each argument includes citations to the same six test results we have cited — two "positive" results and four "negative" results. Counsel are warned against making factual misrepresentations of the record in their arguments and briefing in this Court — at best, such statements unnecessarily cloud our review of what might otherwise be persuasive arguments on appeal and, at worst, they potentially subject the offender to additional sanction. See *Farmer v. State*, 216 Ga. App. 515, 522-523 (1) (455 SE2d 297) (1995) ("[M]isrepresentation of evidence in the record . . . is a misrepresentation of fact and a violation of State Bar Rules. . . ."). To the extent Anderson's argument actually hinges on the presence of *any* amount of THC found in a drug screen, rather than an amount sufficient to warrant a "positive" result, we note that Anderson herself submitted — and, in fact, cited to — her own "positive" drug screen under her rubric.

abuse continued unabated or that his alleged drug use had a detrimental effect on the child. Compare *In the Interest of D. L.*, 268 Ga. App. 360, 363 (1) (601 SE2d 714) (2004) (reviewing quantum, and egregious nature, of evidence of substance abuse in termination of parental rights case); *In the Interest of M. N. L.*, 221 Ga. App. 123, 124 (1) (470 SE2d 753) (1996) (same). To be sure, the only evidence of substance abuse before the trial court was that Cribbs no longer smoked marijuana. Moreover, Anderson has not cited any authority suggesting that a drug screen is mandatory under such circumstances. See OCGA § 19-9-3 (a) (3) (Q) ("the judge *may* consider any relevant factor including, but not limited to . . . any evidence of substance abuse") (emphasis supplied). Against this backdrop, we cannot say that the trial court abused its discretion in declining to order further drug screens for Cribbs.

2. Next, Anderson argues that the trial court abused its discretion by entering a "2-2-5-5" parenting plan that required the child to move between her parents' homes every two to five days — instead of on a weekly basis — and that the plan is not in the child's best interest. We disagree.

Under Georgia law, "visitation rights are a part of custody." *Vines v. Vines*, 292 Ga. 550, 551 (2) (739 SE2d 374) (2013). To that end, and as we have mentioned,

> [i]n deciding visitation, the trial court has very broad discretion, looking always to the best interest of the child. When the trial court has exercised that discretion, this court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion.

(Citation omitted.) *Williams v. Williams*, 301 Ga. 218, 220 (1) (800 SE2d 282) (2017).

Evidence adduced at the final hearing showed that the child resided with Cribbs in 2018 and that Cribbs later exercised visitation each weekend. During his visits, Cribbs and the child would visit parks, take walks, go cycling or swimming, and participate in other family activities. Cribbs testified that he wanted more time with the child and to provide the child with a more stable environment due to Anderson's overnight work schedule. Cribbs did not have the child in any extracurricular activities, but testified that he did pay for any activities and costs the child incurred while in his care. Cribbs and his wife own a five-bedroom home, such that each child has their own room, in a neighborhood where other children are present. Cribbs sought primary physical custody.

Anderson testified that her neighborhood also has several children and that the child plays with them outside daily. Both parents were familiar with the child's teachers, although Cribbs and Anderson had differing views on the child's progress at school.[9] In addition to extracurricular activities like dance and gymnastics, Anderson takes the child on hikes and walks. Anderson asked to have visitation one weekend per month, that the trial court maintain joint legal custody, and that she retain primary physical custody.

In its final order, the trial court found that "it is in the best interest of the child that both parents be involved in the child's life on a permanent basis" because both parents provided care to, and had nurturing relationships with, the child. As a result, the trial court awarded Cribbs and Anderson joint legal and physical custody of the child. To ensure the child continued to attend her elementary school, the trial court held that Anderson's residence "shall be the child's primary residence for school enrollment purposes." The trial court then adopted a "2-2-5-5" parenting schedule in which the child would reside with Anderson on Monday and Tuesday, with Cribbs

---

[9] Cribbs claimed that, based on his wife's observations as a teacher, the child appeared to be "slipping" at school, while Anderson asserted that the child was doing well.

on Wednesday and Thursday, with Anderson from Friday to Tuesday, and with Cribbs from Wednesday to Sunday.

In short, the trial court's primary finding was that it is in the child's best interest to have both parents involved in her life. As a result, the trial court entered a parenting plan that provides Cribbs and Anderson with equal parenting time, maintains the child's attendance at the school in Anderson's district due to the parties' close proximity to each other,[10] and accommodates Anderson's desire for weekend visitation. The parenting plan also requires Cribbs to shoulder a more equal burden of parenting and school preparation. Furthermore, Anderson's briefing on this point is little more than a recitation of facts favorable to herself without recognizing that the record contains evidence to support the trial court's decision. See generally *Williams*, 301 Ga. at 220 (1) ("where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion") (citation omitted); see also *RES-GA LJY, LLC v. Y. D. I., Inc.*, 322 Ga. App. 607, 609 (745 SE2d 820) (2013) ("An abuse of discretion occurs where a ruling is unsupported by *any evidence of record* or where that ruling misstates or misapplies the relevant law.") (citation and

---

[10] In fact, one of Anderson's arguments against awarding Cribbs custody is an apparent concern for Cribbs' wife's workload since he would be unable to take the child due to his work schedule. This argument is unpersuasive.

punctuation omitted; emphasis supplied). Therefore, based upon this evidence and the trial court's findings, we cannot say that the trial court abused its discretion in requiring the parents to follow a "2-2-5-5" parenting schedule.[11]

3. Finally, Anderson asserts that the trial court erred in failing to award her child support and retroactive child support. Again, we disagree.

Our review of an award of child support is for an abuse of discretion only. See *Farrish v. Farrish*, 279 Ga. 551, 552 (615 SE2d 510) (2005). In that vein,

> we will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. But when a question of law is at issue, we review the trial court's decision de novo.

(Citation and punctuation omitted.) *Franco v. Eagle*, 361 Ga. App. 506, 507 (1) (864 SE2d 675) (2021).

---

[11] Although we have affirmed the trial court's application of a "2-2-5-5" schedule in this case, we warn trial courts to be cautious when considering this sort of arrangement. While the schedule may result in approximately equal parenting time and in each parent having visitation on alternating weekends, its success necessarily depends upon a number of factors including, at a minimum, close physical proximity of the parents' residences, a child's strong bond with each parent, each parent's effective parenting on their own, and the ability of the parents to communicate without hostility. Overriding any other concern, of course, is whether such a schedule would be in the best interest of the child.

(a) *Gross Income*. Under Georgia law,

> determining each parent's monthly gross income is the first step that a court must take in calculating child support under our child support guidelines, and a trial court conducting a bench trial must determine and make a written finding of the monthly gross income of both the custodial and noncustodial parent.

(Citations and punctuation omitted.) Id. at 507 (1) (a); see also OCGA § 19-6-15 (f). In its final order of legitimation, the trial curt stated that it

> calculated child support based upon OCGA § 19-6-15, the Georgia Child Support Guidelines. Based upon the testimony and evidence presented, [Cribbs'] gross monthly income is $3,511.00 per month in accordance and [Anderson's] gross monthly income is $5,184.00 per month. [Anderson] pays $148.00 per month for the child's health insurance. . . . Child Support Worksheets are contemporaneously filed with this Order and fully incorporated herein.

In addition, the trial court found that "both parents have covered the expenses of the child while in their custody. Because the Court held child support in abeyance pursuant to the Temporary Order, the Court declines to award retroactive child support."

We find no error. The evidence presented at the final hearing was consistent with the trial court's conclusion. In particular, Cribbs testified that his gross income

13

was $3,511 per month, while Anderson testified that her gross income totaled $5,184 per month. These amounts were recorded on the trial court's Child Support Worksheet and were properly considered by the trial court. Anderson may quibble over the amounts of some of Cribbs' expenses or his net income, but that does not erode the trial court's duty to "determine and make a written finding of the monthly gross income of both the custodial and noncustodial parent." Therefore, we find no error in this step.

(b) *Deviation*. After the trial court determined that the presumptive child support award against Cribbs would be $520.90 per month based upon his gross income, the trial court applied a deviation from the Child Support Schedule. See OCGA §§ 19-6-15 (g), (i) (2) (K) (i). In particular, the trial court applied

> a parenting time deviation as the parents share equal parenting time with the child. The parenting time deviation does not interfere with either party's ability to provide support for the child and allows each parent to provide the child with a similar standard of living.

As a result, the trial court concluded that the "Final Child Support award is $0.00 per month."

OCGA § 19-6-15 (i) (2) (K) (i) provides that the trial court

may order . . . a deviation from the presumptive amount of child support when special circumstances make the presumptive amount of child support excessive or inadequate due to extended parenting time as set forth in the order of visitation, *the child residing with both parents equally*, or visitation rights not being utilized.

(Emphasis supplied.) Compare *Holloway v. Holloway*, 288 Ga. 147, 149 (1) (702 SE2d 132) (2010).

Where a deviation is determined to apply and the factfinder deviates from the presumptive amount of child support, the order must explain [1] the reasons for the deviation, [2] provide the amount of child support that would have been required if no deviation had been applied, and [3] state how application of the presumptive amount of child support would be unjust or inappropriate and how the best interest of the children for whom support is being determined will be served by the deviation. OCGA § 19-6-15 (c) (2) (E) and (i) (1) (B). In addition, the order must include a finding that states how the court's . . . application of the child support guidelines would be unjust or inappropriate considering the relative ability of each parent to provide support. OCGA § 19-6-15 (c) (2) (E) (iii).

Id. Furthermore, "the trial court must attach a completed child support worksheet and Schedule E to the child support order, incorporate those documents by reference into

15

the order, or enter the pertinent information from those documents directly into the order itself." *Black v. Ferlingere*, 333 Ga. App. 789, 791 (2) (777 SE2d 268) (2015).

Although the clear reason the trial court did not award child support is based upon the application of a parental time deviation, Anderson makes no argument on this point. Nevertheless, the record demonstrates that the trial court completed each of the required inquiries to support the application of a deviation. At the outset, the trial court found that "it is in the best interest of the child that both parents be involved in the child's life on a permanent basis." To that end, the trial court's final legitimation order incorporated a Child Support Worksheet, which included the presumptive child support award of $520.90 against Cribbs. Schedule E of the Worksheet also contained the trial court's responses to the required inquiries:

B. Would the presumptive amount be unjust or inappropriate?

No, both parents can provide for the child with the deviation in place. The parents essentially have joint custody of the child.

C. Would deviation serve the best interests of the children for whom support is being determined?

Yes, the deviation allows Father to care for the child and his current family and also allows Mother to care for the child.

16

D. Would deviation seriously impair the ability of the CUSTODIAL Parent or NONPARENT Custodian to maintain minimally adequate housing, food and clothing for the children being supported by the order and to provide other basic necessities?

No, it would not.

As a result, we find no abuse of the trial court's discretion to apply a parenting time deviation to the presumptive child support award. Compare *Holloway*, 288 Ga. at 149 (1); compare *Black*, 333 Ga. App. at (792) (2) (reversing trial court order applying deviation due, in part, to failure to incorporate Schedule E).

(c) *Retroactive Child Support*. Finally, Anderson contends the trial court erred in denying her request for retroactive child support. It is true that "[i]t is the joint and several duty of each parent of a child born out of wedlock to provide for the maintenance, protection, and education of the child until the child reaches the age of 18 or becomes emancipated[.]" OCGA § 19-7-24. However, it is likewise true that trial courts may apply deviations in this context. See, e.g., *Ross v. Small*, 355 Ga. App. 483, 485-486 (5) (844 SE2d 535) (2020) (vacating and remanding retroactive child support award because "[w]hile the trial court could have deviated for some reason that is not articulated in the order, the trial court failed to indicate such

17

rationale in the order"). To the extent Anderson sought retroactive child support from the time of the child's birth in 2012, she presented limited evidence demonstrating expenses in 2015 and 2016; the remainder of Anderson's evidence detailed expenses she incurred after Cribbs filed the petition for legitimation. Even so, as we have noted, Anderson has not presented any argument or citation of authority challenging the trial court's application of a deviation from the presumptive child support award discussed in Division 3 (b) supra. Therefore, we find no error.

In sum, we conclude the trial court did not abuse its discretion in not requiring Cribbs to undergo additional drug screens or in implementing a "2-2-5-5" custody schedule. Furthermore, we find no abuse of discretion with the trial court's application of a parental time deviation and concomitant decision against awarding child support and retroactive child support to Anderson. Therefore, we affirm the trial court's final order of legitimation.

*Judgment affirmed. Barnes, P. J., and Brown, J., concur.*